No. 25-693

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

ADAM RICHARDS, *et al.*,
*Plaintiffs-Appellants*,

V.

GAVIN NEWSOM, IN HIS OFFICIAL CAPACITY
AS GOVERNOR OF THE STATE OF CALIFORNIA *et al.*,
*Defendants-Appellees.*

———————————

**On Appeal from the United States District Court**
**for the Central District of California**
No. 8:23-cv-02413-JVS-KES
The Honorable James V. Selna, Judge

———————————

## APPELLEE'S ANSWERING BRIEF

———————————

ROB BONTA
*Attorney General of California*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*

ANNE P. BELLOWS
CAROLYN F. DOWNS
*Deputy Attorneys General*
MARK R. BECKINGTON
*Supervising Deputy Attorney General*

CALIFORNIA DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
(415) 510-3847
Anne.Bellows@doj.ca.gov
*Attorneys for Defendant and Appellee*

July 28, 2025

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................ 1

Statement Regarding Addendum .................................................... 3

Jurisdictional Statement ................................................................. 3

Statement of the Issues................................................................... 3

Statement of the Case..................................................................... 4

    I.     Legal Background ..................................................... 4

          A.     Section 26806's audio-visual recording requirement for licensed firearms dealers ........................................... 4

          B.     California's comprehensive regulatory scheme for firearm dealers.................................................... 6

    II.    Procedural History..................................................... 8

Summary of the Argument.............................................................. 10

Standard of Review ......................................................................... 13

Argument......................................................................................... 13

    I.     Appellants Failed to Allege a Valid Claim that Section 26806 Violates the Fourth Amendment ................................. 14

          A.     The audio-visual recording required by Section 26806 does not constitute a "search" under the Fourth Amendment ....................................................... 15

                1.     Section 26806's requirement to install an audio-visual recording system does not intrude on Appellants' diminished reasonable expectation of privacy ........................................ 15

                2.     Section 26806 does not turn firearms dealers into state actors ................................................... 20

                3.     Section 26806 does not effect a physical intrusion ............................................................ 23

i

**TABLE OF CONTENTS**
**(continued)**

Page

B.  Even if construed as authorizing a search of a dealer's premises, Section 26806 is reasonable under the *Burger* test .............................................................. 26

C.  Section 26806 is not overbroad when applied to at-home dealers ............................................................. 28

II.  Appellants Do Not Meet Any of the Tests for a Viable Fifth Amendment Takings Claim ................................... 31

A.  Installation of FFL-owned surveillance systems is not a per se physical taking .......................................... 31

B.  Appellants' conclusory and hypothetical allegations cannot support a claim for a regulatory taking under *Penn Central* ................................................................. 36

1.  Appellants failed to plead cognizable economic impact from Section 26806 ................ 37

2.  The surveillance system requirement does not interfere with Appellants' reasonable investment-backed expectations .......................... 38

3.  The character of the government action is minimal ................................................................. 39

III.  Appellants Fail to State a Plausible Speech or Association Claim Under the First Amendment ......................................... 41

A.  Appellants' claim that Section 26806 "chills" speech is fatally speculative and subjective .............................. 41

1.  The Amended Complaint does not allege any nonspeculative harm that could result from Appellants' speech ................................................ 42

2.  Speculative fear of surveillance alone does not support a First Amendment claim ................ 48

3.  The same analysis applies to firearms dealers who choose to operate out of their homes .......... 51

## TABLE OF CONTENTS
### (continued)

Page

a.     Appellants have not stated a plausible claim that Section 26806 unconstitutionally chills free association ................................................. 53

B.     Section 26806 easily passes intermediate constitutional scrutiny ................................................. 54

C.     Section 26806 does not implicate the right to speak anonymously ..................................................... 56

D.     Section 26806 is not invalid under the overbreadth doctrine ...................................................................... 58

Conclusion ............................................................................. 59

iii

# TABLE OF AUTHORITIES

**Page**

CASES

*Ams. for Prosperity Found. v. Bonta*
594 U.S. 595 (2021)....................................................54

*Ariz. Students' Ass'n v. Arizona Bd. of Regents*
824 F.3d 858 (9th Cir. 2016) ...............................42, 46

*Arizona Att'ys for Crim. Just. v. Mayes*
127 F.4th 105 (9th Cir. 2025) ...................................58

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)....................................................13

*Atlas Corp. v. United States*
895 F.2d 745 (Fed. Cir. 1990) ...................................34

*Ballinger v. City of Oakland*
24 F.4th 1287 (9th Cir. 2022) ...................................32

*Baltimore Sun Co. v. Ehrlich*
437 F.3d 410 (4th Cir. 2006) ...............................43, 47

*Bates v. City of Little Rock*
361 U.S. 516 (1960)....................................................54

*Bell v. Johnson*
308 F.3d 594 (6th Cir. 2002) .....................................47

*Benavidez v. Cnty. of San Diego*
993 F.3d 1134 (9th Cir. 2021) ...............................13, 46

*Boise Cascade Corp. v. United States*
296 F.3d 1339 (Fed. Cir. 2002) .................................35

*Bridge Aina Leʹa, LLC v. Land Use Comm'n*
950 F.3d 610 (9th Cir. 2020) ...............................38, 40

iv

# TABLE OF AUTHORITIES
## (continued)

Page

*Brodheim v. Cry*
584 F.3d 1262 (9th Cir. 2009) ...................................................47

*Brunette v. Humane Soc'y of Ventura Cnty.*
294 F.3d 1205 (9th Cir. 2002) ...........................................21, 22

*Buckley v. Am. Const. L. Found., Inc.*
525 U.S. 182 (1999)...........................................................56, 57

*Cal. Hous. Sec., Inc. v. United States*
959 F.2d 955 (Fed. Cir. 1992) ...........................................33, 34

*Capp v. Cnty. of San Diego*
940 F.3d 1046 (9th Cir. 2019) ...................................................46

*Carpenter v. United States*
585 U.S. 296 (2018)....................................................... *passim*

*CDK Global, LLC v. Brnovich*
16 F.4th 1266 (9th Cir. 2021) ......................................... *passim*

*Cedar Point Nursery v. Hassid*
594 U.S. 139 (2021)...................................................................25

*City of Los Angeles v. Lyons*
461 U.S. 95 (1983).....................................................................45

*City of Los Angeles v. Patel*
576 U.S. 409 (2015)...................................................................14

*Clapper v. Amnesty Int'l USA*
568 U.S. 398 (2013).....................................................42, 48, 49

*Colonnade Catering Corp. v. United States*
397 U.S. 72 (1970).....................................................................25

*Colony Cove Props., LLC v. City of Carson*
888 F.3d 445 (9th Cir. 2018) .....................................................37

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Comite de Jornaleros de Redondo Beach v. City of Redondo
   Beach*
   657 F.3d 936 (9th Cir. 2011) ........................................................59

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension
   Tr. for S. Cal.*
   508 U.S. 602 (1993)....................................................................39

*Dicey v. Hanks*
   2015 WL 4879627 (E.D. Cal. Aug. 14, 2015)...........................48

*Dougherty v. City of Covina*
   654 F.3d 892 (9th Cir. 2011) ......................................................13

*Douglas v. Reeves*
   964 F.3d 643 (7th Cir. 2020) ......................................................47

*Eunique v. Powell*
   302 F.3d 971 (9th Cir. 2002) ......................................................13

*Florida v. Jardines*
   569 U.S. 1 (2013).........................................................19, 25, 30

*Free Speech Coal., Inc. v. Paxton*
   145 S. Ct. 2291 (2025)................................................................55

*Garcia v. City of Trenton*
   348 F.3d 726 (8th Cir. 2003) ......................................................46

*Gazzola v. Hochul*
   88 F.4th 186 (2d Cir. 2023) ..........................................................5

*Gazzola v. Hochul*
   No. 1:22-cv-01134-BKS-DJS (N.D.N.Y. 2022) ..........................5

*Gray v. First Winthrop Corp.*
   989 F.2d 1564 (9th Cir. 1993) .......................................24, 27, 48

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Guggenheim v. City of Goleta*
    638 F.3d 1111 (9th Cir. 2010) ..................................................38

*Hendler v. United States*
    952 F.2d 1364 (Fed. Cir. 1991) ................................................35

*Houston Cmty. Coll. Sys. v. Wilson*
    595 U.S. 468 (2022)..................................................................46

*In re Anonymous Online Speakers*
    661 F.3d 1168 (9th Cir. 2011) ...........................................56, 57

*Irizarry v. Yehia*
    38 F.4th 1282 (10th Cir. 2022) .................................................46

*John Doe No. 1 v. Reed*
    561 U.S. 186 (2010)..................................................................57

*Johnson v. Feist*
    2020 WL 6121981 (C.D. Cal. Sept. 8, 2020) ...........................48

*Jones v. Solomon*
    90 F.4th 198 (4th Cir. 2024) ....................................................46

*Killgore v. City of S. El Monte*
    3 F.4th 1186 (9th Cir. 2021) .............................................18, 20

*Laird v. Tatum*
    408 U.S. 1 (1972)................................................................48, 49

*Lingle v. Chevron U.S.A., Inc.*
    544 U.S. 528 (2005)............................................................37, 40

*Loc. 309, United Furniture Workers of Am., C.I.O. v. Gates*
    75 F. Supp. 620 (N.D. Ind. 1948) .............................................50

*Loretto v. Teleprompter Manhattan CATV Corp.*
    458 U.S. 419 (1982)............................................................33, 34

vii

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Marquez-Reyes v. Garland*
  36 F.4th 1195 (9th Cir. 2022) ....................................58

*Marshall v. Barlow's, Inc.*
  436 U.S. 307 (1978).............................................18, 19, 31, 52

*McIntyre v. Ohio Elections Comm'n*
  514 U.S. 334 (1995)................................................56

*Mendocino Env't Ctr. v. Mendocino Cnty.*
  14 F.3d 457 (9th Cir. 1994) ......................................42

*Minneapolis Branch of the NAACP v. City of Minneapolis*
  2024 WL 1886759 (D. Minn. Mar. 29, 2024) ...........................50

*Mitchell Arms, Inc. v. United States*
  7 F.3d 212 (Fed. Cir. 1993) ...................................33, 34, 36

*Modern Sportsman, LLC v. United States*
  145 Fed. Cl. 575 (Ct. Fed. Cl. 2019) ..........................33, 34

*NAACP v. Alabama ex rel. Patterson*
  357 U.S. 449 (1958)................................................54

*New York v. Burger*
  482 U.S. 691 (1987)............................................11, 26, 27

*O'Brien v. Welty*
  818 F.3d 920 (9th Cir. 2016) ..................................42, 43, 46, 47

*Penn Central Transp. Co. v. City of New York*
  438 U.S. 104 (1978)............................................31, 36, 38

*Perry v. Schwarzenegger*
  591 F.3d 1147 (9th Cir. 2010) .....................................44

*Presbyterian Church (USA) v. United States*
  870 F.2d 518 (9th Cir. 1989) ..................................49, 50

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Rancho de Calistoga v. City of Calistoga*
  800 F.3d 1083 (9th Cir. 2015) ............................................. 36, 39

*Rush v. Obledo*
  756 F.2d 713 (9th Cir. 1985) ............................................. *passim*

*Shelton v. Tucker*
  364 U.S. 479 (1960) ...................................................... 54

*Shook v. Cnty. of Hawaii Police Dep't*
  2022 WL 3915566 (D. Haw. Aug. 31, 2022) ........................... 48

*TikTok Inc. v. Garland*
  145 S. Ct. 57 (2025) ..................................................... 55, 56

*United States v. 4,432 Mastercases of Cigarettes, More or Less*
  448 F.3d 1168 (9th Cir. 2006) ...................................... 18

*United States v. Argent Chem. Labs., Inc.*
  93 F.3d 572 (9th Cir. 1996) ................................... 15, 18, 20, 26

*United States v. Biswell*
  406 U.S. 311 (1972) ...................................................... *passim*

*United States v. Esqueda*
  88 F.4th 818 (9th Cir. 2023) ....................................... 23

*United States v. Hansen*
  599 U.S. 762 (2023) ...................................................... 58

*United States v. Jones*
  565 U.S. 400 (2012) ................................................... 14, 19

*United States v. Salerno*
  481 U.S. 739 (1987) ...................................................... 13

*United States v. Sparks*
  265 F.3d 825 (9th Cir. 2001) ....................................... 23

ix

## TABLE OF AUTHORITIES
### (continued)

**Page**

*United States v. Wilson*
　　13 F.4th 961 (9th Cir. 2021) ....................................................22

*Verdun v. City of San Diego*
　　51 F.4th 1033 (9th Cir. 2022) ..................................................26

*Virginia v. Hicks*
　　539 U.S. 113 (2003)...........................................................58, 59

*Whalen v. McCullen*
　　907 F.3d 1139 (9th Cir. 2018) ................................................24

*White Oak Realty, LLC v. United States Army Corps of Eng'r*
　　746 Fed. App'x 294 (5th Cir. 2018) .........................................33

*White v. Davis*
　　13 Cal. 3d 757 (1975) ............................................................50

*Wintrode v. Stoutin*
　　2024 WL 4766305 (D. Idaho Nov. 13, 2024) ..........................48

*Yee v. City of Escondido*
　　503 U.S. 519 (1992)................................................................32

*Zurcher v. Stanford Daily*
　　436 U.S. 547 (1978)................................................................44

**CONSTITUTIONAL PROVISIONS**

United States Constitution
　　First Amendment ............................................................*passim*
　　Second Amendment.........................................................*passim*
　　Fourth Amendment..........................................................*passim*
　　Fifth Amendment.............................................................*passim*
　　Fourteenth Amendment ....................................................5, 8, 9

x

# TABLE OF AUTHORITIES
## (continued)

Page

STATUTES

United States Code, Title 18

§ 923(a) .................................................................. 7
§ 923(d)(1) ............................................................. 6
§ 923(g) .................................................................. 8

United States Code, Title 28

§ 1291 .................................................................... 3
§ 1331 .................................................................... 3

United States Code, Title 42

§ 1983 ................................................................... 20

California Penal Code

§ 15000.3 .............................................................. 24
§ 15044 ................................................................. 24
§ 17110 .................................................................. 8
§ 26700 ............................................................... 6, 7
§ 26705 .................................................................. 7
§ 26710 .................................................................. 7
§ 26715 .................................................................. 7
§ 26720(a) ..................................................... 8, 36, 39
§ 26806 ............................................................ passim
§ 26806(a) .................................................. 5, 29, 47, 50
§ 26806(a)(3) ......................................................... 17
§ 26806(a)(3)–(4) ..................................................... 5
§ 26806(a)(6) .......................................................... 5
§ 26806(b) ..................................................... 23, 44, 56
§ 26806(b)(1) ................................................ 25, 29, 45, 57
§ 26806(b)(1)–(2) .................................................. passim
§ 26806(b)(1)–(3) .................................................. 6, 44
§ 26806(b)(2) ..................................................... 20, 44
§ 26806(c) .............................................................. 6

# TABLE OF AUTHORITIES
## (continued)

Page

California Penal Code, continued

§ 26835 ................................................................................................. 7
§ 26850 ................................................................................................. 7
§ 26853 ................................................................................................. 7
§ 26859 ................................................................................................. 7
§ 26860 ................................................................................................. 7
§ 26883 ................................................................................................. 7
§ 26885 ................................................................................................. 7
§ 26890(a) ..................................................................................... 8, 26
§ 26892 ................................................................................................. 7
§ 26910 ................................................................................................. 7
§ 28160 ................................................................................................. 8
§ 28175 ................................................................................................. 8
§ 28180 ................................................................................................. 8
§ 28205 ................................................................................................. 8
§ 28210 ................................................................................................. 8
§ 28215 ................................................................................................. 8

III. Comp. Stat. § 68/5-50 ............................................................... 5

N.Y. Gen. Bus. Law § 875-b(2) ..................................................... 5

Wash. Rev. Code § 9.41.110(11) ................................................... 5

## COURT RULES

Ninth Cir. R. 28-2.7 ......................................................................... 3

Federal Rule of Civil Procedure 12(b)(6) ................................... 13

## OTHER AUTHORITIES

California Code of Regulations, Title 4

§ 12372 ......................................................................................... 24, 51
§ 12396 ......................................................................................... 24, 51
§ 15000.3(c) ................................................................................ 24, 51
§ 15044 ......................................................................................... 24, 51

xii

## TABLE OF AUTHORITIES
### (continued)

**Page**

California Code of Regulations, Title 11
    § 4022 ...................................................................................8
    § 4032.5 ................................................................................7
    § 4037 ...................................................................................7

Code of Federal Regulations, Title 12
    § 326.3 ............................................................................24, 50

Cal. Senate Bill No. 1384, Reg. Sess. 2021-2022 ...........................................4

# INTRODUCTION

California Penal Code § 26806 requires licensed firearm dealers to maintain digital surveillance systems on the premises they use to conduct business. These audio-visual recording systems assist law enforcement in combatting firearms trafficking, thefts, straw purchases, and other gun crimes. Appellants challenge this reasonable regulation of the commercial sale of firearms—similar to video monitoring requirements for gambling, banking, and cannabis—as violating their rights under the First, Fourth, and Fifth Amendments of the United States Constitution. But none of their claims are cognizable, and as such, this Court should affirm the district court's decision dismissing their claims.

Appellants lean heavily on conclusory, exaggerated claims that Section 26806 requires "Orwellian" surveillance, where the State can tune in "at-will" to watch each firearm dealer's version of "the Truman Show." These hyperbolic assertions are simply and demonstrably wrong. The plain language of the statute prohibits access to or use of the recordings by anyone, including the government, except in narrowly limited circumstances. Under the carefully designed statutory scheme, the government can access the system or its recordings only to complete inspections for compliance with Section 26806 or pursuant to a judicial warrant or court order. Cal. Pen. Code § 26806(b)(1)–(2).

It is of little surprise, then, that Appellants fail to state a single valid claim for relief.  Appellants' Fourth Amendment claims fail because the audio-visual recording system required by Section 26806 does not constitute a "search" under the Fourth Amendment: the requirement does not constitute a physical intrusion or violate Appellants' reasonable expectation of privacy.  Even if that system was a "search"—which it is not—Appellants operate in the historically highly regulated firearms industry in which there is little reasonable expectation of privacy and in which warrantless administrative searches have been upheld as constitutional.  Further, the law requires the system to record only certain areas of the licensee's business premises that are accessible to the public, where there is less of an expectation of privacy.  And the law's strict protections of the recordings mitigate any privacy or other related concerns.  The law's application to a highly regulated industry also defeats Appellants' claims of a physical or regulatory taking in violation of the Fifth Amendment.

Appellants' First Amendment claims are equally meritless.  Appellants cannot plausibly allege any objective harm or threat of harm that could result from their exercise of free speech or association rights.  Accordingly, any alleged "chill" on those rights is subjective, and for that reason, inadequate to show a violation of the Constitution.  Similarly, Section 26806 has no bearing on anonymous political

speech, and because it does not regulate speech in any way, it does not violate the overbreadth doctrine.

As to each of their claims, Appellants fall far short of showing that Section 26806 is facially unconstitutional. Appellants' as-applied challenge related to at-home dealers fares no better. Those dealers' voluntary choice to operate a business in a highly regulated industry from their homes does not cure any of the flaws in Appellants' constitutional claims, nor provide a sound basis for limiting the application of common-sense safety regulations to dealers selling lethal weapons.

This Court should affirm dismissal of each of Appellants' claims.

## STATEMENT REGARDING ADDENDUM

An addendum of pertinent statutory and constitutional provisions has been filed with this brief. Ninth Cir. R. 28-2.7.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal from the district court's final judgment under 28 U.S.C. § 1291. The Court has subject matter jurisdiction over Appellants' federal constitutional claims under 28 U.S.C. § 1331.

## STATEMENT OF THE ISSUES

1. Whether Appellants plausibly alleged that Section 26806's surveillance system requirement for operators in the highly regulated firearms industry constitutes an unreasonable search under the Fourth Amendment, where access is limited to narrow, constitutionally permissible circumstances?

3

2. Whether installation of dealer-owned surveillance systems in businesses that operate in a highly regulated industry with a history of extensive regulation amounts to a physical per se taking or regulatory taking when operators do not have a right to exclude?

3. Whether Appellants have plausibly alleged that the presence of an audio-visual recording system in gun stores violates First Amendment speech or association rights where Section 26806 creates no objective harm or threat of harm to speakers based on their speech or association, does not require disclosure of organizational affiliation, does not implicate anonymous speech, and does not regulate or punish speech?

## STATEMENT OF THE CASE

### I. LEGAL BACKGROUND

### A. Section 26806's audio-visual recording requirement for licensed firearms dealers

On September 30, 2022, Senate Bill No. 1384 was signed into law, adding, among other things, Section 26806 to the California Penal Code. *See* 2021 Cal. Senate Bill No. 1384, Reg. Sess. 2021-2022. Section 26806 requires licensed federal firearm dealers (referred to in this brief as dealers or "FFLs," short for federal firearm licensees) to maintain a digital video-audio surveillance system on their premises that meets certain criteria. The requirement aids law enforcement in

4

combatting and deterring firearms trafficking, theft, straw purchases, and other gun crimes, and provides key evidence in prosecuting those crimes. 2-ER-38–61.

Section 26806 went into effect on January 1, 2024, as part of California's regulatory scheme for the licensing and operation of firearm dealers. *See* Cal. Pen. Code § 26806(a). The statute requires dealers to record, for twenty-four hours a day, "[i]nterior views of all entries or exits to the premises," "[a]ll areas where firearms are displayed," and "[a]ll points of sale, sufficient to identify the parties involved in the transaction."[1] *Id.* § 26806(a)(3)–(4). The recordings must be securely stored for at least one year. *Id.* § 26806(a)(6).

Importantly, Section 26806 provides explicit safeguards against the use and abuse of the recordings produced by the surveillance systems. Dealers are

---

[1] California is not alone in imposing surveillance requirements on licensed firearm dealers. *See, e.g.*, Wash. Rev. Code § 9.41.110(11) (requiring digital video surveillance systems on a dealer's business premises); N.Y. Gen. Bus. Law § 875-b(2) (dealer location must "be equipped with a video recording device at each point of sale and each entrance and exit to the premises" from the inside and outside vantage points); 430 Ill. Comp. Stat. § 68/5-50 (requiring video surveillance "of critical areas of the business premises, including, but not limited to, all places firearms in inventory are stored, handled, sold, or transferred, and each entrance and exit."). Appellee is aware of only one challenge currently pending against one of these statutes. *See Gazzola v. Hochul*, No. 1:22-cv-01134-BKS-DJS (N.D.N.Y. 2022) (challenging 31 state statutes, including New York General Business Law § 875-b(2) under the Second Amendment, Fourteenth Amendment, Fifth Amendment right to be free from self-incrimination and due process, and preemption grounds). In 2023, the Second Circuit upheld denial of plaintiffs' preliminary injunction motion. *Gazzola v. Hochul*, 88 F.4th 186 (2d Cir. 2023).

5

prohibited from using, sharing, allowing access to, or otherwise releasing the

recordings except in narrow circumstances, only two of which are mandatory:

> (1) A licensee shall allow access to the system to an agent of the department or a licensing authority conducting an inspection of the licensee's premises, for the purpose of inspecting the system for compliance with this section, and only if a warrant or court order would not generally be required for that access.

> (2) A licensee shall allow access to the system or release recordings to any person pursuant to search warrant or other court order.

> (3) A licensee *may* allow access to the system or release recordings to any person in response to an insurance claim or as part of the civil discovery process, including, but not limited to, in response to subpoenas, request for production or inspection, or other court order.

*Id.* § 26806(b)(1)–(3) (emphasis added).  Dealers must also post a sign at

each entrance of their business premises notifying patrons that the premises are

under surveillance.  *Id.* § 26806(c).

**B.  California's comprehensive regulatory scheme for firearm dealers**

Licensed FFLs must comply with numerous statutory and regulatory

requirements beyond those in Section 26806.  To obtain a license to sell firearms in

California, a person must have a valid federal firearms license from the federal

Bureau of Alcohol, Tobacco, Firearms and Explosives[2] ("ATF"), Cal. Pen. Code

---

[2] To obtain an ATF license, a person must be 21 years of age or older, apply for the license, and comply with other federal statutory requirements.  18 U.S.C. § 923(d)(1).

§ 26700(a); a regulatory or business license as required by local government, *id.* § 26700(b); a valid seller's permit from the State Board of Equalization, *id.* § 26700(c); a Certificate of Eligibility issued by the California Department of Justice ("DOJ") demonstrating the applicant is not prohibited from acquiring or possessing a firearm, *id.* §§ 26700(d), 26710; a license granted by the licensing authority of the city and/or county where they seek to do business, *id.* §§ 26700(e), 26705; and the person must be on the DOJ centralized list of all persons licensed to sell firearms, *id.* §§ 26700(f), 26715.  Applicants must submit fingerprints to obtain a DOJ Certificate of Eligibility and an ATF license.[3]  11 C.C.R. § 4032.5; 18 U.S.C. § 923(a).  If granted a license, the dealer must regularly renew that license to remain active.  11 C.C.R. § 4037.

Upon obtaining their California license, FFLs must comply with a host of state regulations governing nearly every aspect of firearms sales.  *See, e.g.*, Cal. Pen. Code § 26885 (reporting loss and theft); § 26892 (procedure and reporting requirements for temporary transfer and storage of firearm); § 26910 (report to DOJ if firearm not delivered within statutory time period); § 26835 (posting warnings and notices); §§ 26850, 26853, 26859, 26860 (safe handling demonstrations upon transfer); § 26883 (restriction on restocking or return-related

---

[3] ATF also requires a photograph of the applicant.  18 U.S.C. § 923(a).

fees).  Dealers must also store all firearm inventory in the licensed location, secure inventory using one of the methods outlined by statute, *id.* § 26890(a), and satisfy "secure facility" requirements for perimeter doorways and windows, *id.* § 17110.

Licensed dealers must obtain personal information from potential purchasers for recording and background-check purposes. *E.g.*, *id.* §§ 28160, 28175, 28180, 28205, 28210, 28215.  They must also submit to inspection by state authorities at least once every three years to ensure dealers are complying with state law, as well as inspections by federal authorities.  *Id.* § 26720(a); 11 C.C.R. § 4022; 18 U.S.C. § 923(g).

## II.   PROCEDURAL HISTORY

Nearly fifteen months after Section 26806's enactment, Appellants (FFLs, a firearms instructor, and organizational plaintiffs) sued the Governor and Attorney General to enjoin it.  Their original Complaint brought claims under the First, Second, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.  4-ER 461–575.

Within days of the law's effective date, Appellants filed an Ex Parte Application and Application for Temporary Restraining Order and Issuance of Preliminary Injunction seeking to enjoin Section 26806.  The district court denied the TRO, 1-ER-7, and soon after denied the preliminary injunction request after full briefing and oral argument from the parties, including supplemental briefing

ordered by the district court.  3-ER-322.  In its denial, the district court concluded Appellants failed to meet the factors for a preliminary injunction: it held, most notably, that Appellants had no likelihood of success on the merits of any of their claims.  3-ER-327–43.

The Governor and Attorney General then filed a motion to dismiss.  4-ER-651.  In their opposition, Appellants did not oppose dismissal of their Second or Fourteenth Amendment claims, or the Governor as a defendant.  The parties stipulated to—and the district court granted—dismissal of the Second and Fourteenth Amendment claims and the Governor as a defendant and leave for Appellants to file an amended complaint.  1-ER-7.  In their Amended Complaint, Appellants assert claims under only the First, Fourth, and Fifth Amendments and only against the Attorney General.[4]  2-ER-245–317.  Among other forms of relief, Appellants seek a declaration that Section 26806 violates these constitutional provisions "on its face and as applied to [Appellants]."  2-ER-316.

The Attorney General moved to dismiss the Amended Complaint without leave to amend, which Appellants opposed.  1-ER-3.  The district court granted the motion to dismiss as to all claims, agreeing with the Attorney General that

---

[4] Appellants do not appeal their voluntary dismissal of the Governor or their claims under the Second and Fourteenth Amendments.  However, Appellants' Opening Brief continues to list the Governor as a defendant and appellee.  At this point, Attorney General Bonta is the only defendant-appellee remaining in the case.

9

Appellants failed to state any viable claims, but granted Appellants leave to amend. *Id.* However, instead of amending, Appellants prematurely appealed to this Court before the district court entered final judgment. 2-ER-32; 4-ER-644–45. This Court dismissed the appeal for lack of jurisdiction. 4-ER-645. Following Appellants' request for judgment, 4-ER-643, the district court entered final judgment on January 28, 2025, 1-ER-2, and Appellants filed the instant appeal.

## SUMMARY OF THE ARGUMENT

Appellants' allegations do not raise a right to relief on any of their claims.

***Fourth Amendment.*** Section 26806 does not facially violate the Fourth Amendment. Section 26806 does not constitute a Fourth Amendment "search" because the law's requirements do not amount to a physical intrusion, nor do Appellants have a reasonable expectation of privacy sufficient to give rise to a search. Even if the surveillance system requirement was a "search," Section 26806 falls neatly within the closely regulated industry exception to the warrant requirement for several reasons.

First, the Supreme Court has upheld reasonable warrantless inspections in the highly regulated industry of firearm dealing. Second, as operators in such an industry, Appellants have a diminished expectation of privacy due to the history of regulation of firearm dealer, as well as the law's focus only on certain areas of the business premises. And third, Section 26806 easily passes muster under the three-

10

factor test outlined in *New York v. Burger*: the government has a substantial interest in the regulatory scheme, Section 26806 is necessary to further that regulatory scheme, and the statute's clear, reasonable limitations provide a constitutionally adequate substitute for a warrant. Because Section 26806 does not violate the Fourth Amendment, even if the law turned FFLs into government actors, the FFLs are confined by the same statutory limitations as government agents, resulting in no Fourth Amendment violation.

Appellants' as-applied Fourth Amendment claim also fails. Section 26806's application to at-home firearm dealers poses no more of a Fourth Amendment violation than its application to dealers doing business from a store front. At-home dealers choose to operate their businesses from their home, knowing they do so in an industry subject to numerous regulations, including security requirements.

***Fifth Amendment.*** The statute's requirement that FFLs purchase and install video surveillance systems does not amount to a Fifth Amendment taking, either facially or as-applied. Firearm dealers, by virtue of their voluntary operation in a highly regulated industry, do not have the full bundle of property rights that would support a takings claim, and Appellants have not sufficiently alleged to the contrary. Nor have they alleged facts to support a regulatory takings claim. The cost of implementing the surveillance system is not, on its own, sufficient to find an economic impact under the correct standard. Appellants do not have reasonable

11

investment backed expectations that they would be free from continued state regulation. And finally, the character of the government action here is minimal in light of the lack of interference with their reasonable investment backed expectations.

***First Amendment.*** Appellants cannot succeed on their chilled speech claims on either a facial or as-applied basis because they cannot make the threshold showing that Section 26806 chills a person of ordinary firmness from freely speaking given the absence of any objective harm or threat of harm that could reasonably be feared to result from free speech. Appellants also fail to state a claim that Section 26806 chills association: Section 26806 does not require disclosure of organizational membership, and it would not chill a person of ordinary firmness from freely associating given the strict limits on use and access to the recording system. Even if Section 26806 did objectively chill speech or association, which it does not, it would still pass First Amendment muster because it advances important governmental interests and does not burden substantially more speech or association than necessary to do so. Finally, Section 26806 does not violate either the right to anonymous speech or the overbreadth doctrine because it does not regulate speech or require disclosure of a person's identity based on their speech.

## STANDARD OF REVIEW

The Court applies de novo review to an order dismissing claims under Federal Rule of Civil Procedure 12(b)(6). *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011). "The facts alleged in a complaint are to be taken as true and must 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Though the factual allegations must be construed in plaintiffs' favor, "'conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.'" *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) (quoting *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)); *see also Ashcroft*, 556 U.S. at 678–79.

The constitutionality of a statute is reviewed de novo. *Eunique v. Powell*, 302 F.3d 971, 973 (9th Cir. 2002). "'A court should invalidate the statutory provision only for the most compelling constitutional reasons.'" *Id.* (quoting *Gray v. First Winthrop Corp.*, 989 F.2d 1564, 1567 (9th Cir. 1993)).

## ARGUMENT

In bringing a facial challenge, Appellants bear a "heavy burden" of showing that "no set of circumstances exists under which the Act would be valid." *See United States v. Salerno*, 481 U.S. 739, 745 (1987). Appellants fall well short of this showing as Section 26806 easily passes muster under the Fourth, Fifth, and

13

First Amendments.  To the extent the Amended Complaint raises as-applied claims for at-home dealers, those claims also fail.

## I.  APPELLANTS FAILED TO ALLEGE A VALID CLAIM THAT SECTION 26806 VIOLATES THE FOURTH AMENDMENT

The Fourth Amendment protects the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. Const. amend. IV.  A "search" occurs either when a government officer violates a person's reasonable expectation of privacy, or if the government physically occupies private property for the purpose of obtaining information. *United States v. Jones*, 565 U.S. 400, 404–06 (2012).  Warrantless searches are per se unreasonable, unless an exception to the warrant requirement applies, such as a search of a closely regulated business or an administrative search.  *See City of Los Angeles v. Patel*, 576 U.S. 409, 419–20 (2015).

Section 26806's audio-visual recording requirements are not facially unconstitutional because those requirements do not constitute a Fourth Amendment "search" under either the reasonable expectation of privacy test or as a physical invasion.  Even if this Court finds otherwise, this case fits squarely within the closely regulated industry exception to the warrant requirement such that Section 26806's application would not constitute an unreasonable search.  And finally, the district court correctly rejected Appellants' remaining Fourth Amendment claims that Section 26806 is overbroad and unconstitutional as applied to home-based

14

FFLs, and that the law turns FFL owners into government-mandated actors.  1-ER-21–24.

### A. The audio-visual recording required by Section 26806 does not constitute a Fourth Amendment "search"

Appellants did not and cannot plausibly allege that the audio-visual recording required by Section 26806 constitutes a search, and the district court was correct to dismiss their Fourth Amendment claim on these grounds.

### 1. Section 26806's requirement to install an audio-visual recording system does not intrude on Appellants' diminished reasonable expectation of privacy

Appellants cannot meet the baseline requirement of showing they have a reasonable expectation of privacy because operators in closely-regulated industries have a "diminished expectation of privacy." *United States v. Argent Chem. Labs., Inc.*, 93 F.3d 572, 575 (9th Cir. 1996); *see* Statement of the Case § 1.B, *supra*.  To divert attention from this hurdle and paint Section 26806 as broadly as possible, Appellants argue that Section 26806's audio-visual recording requirement is a search at the moment of recording.  Opening Br. at 14–17.  Neither precedent nor logic supports this position where the government's access to the system and its recordings is confined to two narrow exceptions: one for the limited purpose of ensuring compliance with statutory requirements, and the other only under the auspices of a warrant or court order.  Cal. Pen. Code § 26806(b)(1)–(2).

15

Appellants cite *Carpenter v. United States*, 585 U.S. 296 (2018), for their argument that the search occurs upon the "creation" of the recordings but mischaracterize the meaning of *Carpenter* in doing so.  In *Carpenter*, the "[g]overnment's *acquisition* of the cell-site records was a search," 585 U.S. at 316 (emphasis added)—not the creation of the records themselves.  *See id.* at 306 (applying Fourth Amendment principles to acquisition of wireless carrier cell-site records revealing the location of Carpenter's cell phone whenever it made or received calls).  Appellants claim that *Carpenter* stands for the assertion that a search occurs "no matter when the government physically seizes the data." Opening Br. at 14–15.  This is plainly wrong.  *Carpenter* clearly states the contrary, and repeats throughout the opinion that the search occurred when the government acquired the cell phone location data.  585 U.S. at 306, 313, 316, 317, 320.

Here, the government does not acquire (or even access) the recordings at all, unless it is to view the recordings as part of an administrative inspection to ensure compliance with the statute, or pursuant to a warrant or other court order.  Cal. Pen. Code § 26806(b)(1)–(2).  Thus, even when the government does obtain recordings, it does so within the bounds of the Fourth Amendment's warrant requirement or the closely regulated business exception to the warrant requirement. *See infra*, Argument I.B.  This is fundamentally distinguishable from the

16

government's access to the cell phone location data in *Carpenter*, where there were no similar safeguards.

Appellants contend that they have the same expectation of privacy in the video recordings produced here as in *Carpenter* but they stretch the meaning of the case beyond its scope. *See* 585 U.S. at 316 ("Our decision today is a narrow one."). The recordings here are easily distinguishable from the data acquired in *Carpenter*. In *Carpenter*, the Supreme Court's analysis focused on the nature and amount of the data at issue in determining that the defendant had a reasonable expectation of privacy in his cell phone location records. Cell phone location data reveal a moment-by-moment record of a person's movements—capturing every place that person goes. *Carpenter*, 585 U.S. at 309 ("[A] phone goes wherever its owner goes"). Unlike recordings from the surveillance systems here, "[a] cell phone faithfully follows its owner beyond public thoroughfares," going into every aspect of the owner's life and location at all times of the day. *Id.* at 311. By contrast, the surveillance at issue here is not nearly as comprehensive. The surveillance systems only capture activity in the business premises and only certain areas of those premises—the points of sale, where firearms are stored, and entrances and exits. Cal. Pen. Code § 26806(a)(3). The recordings simply cannot create "an all-encompassing record of [Appellants'] whereabouts," *Carpenter*, 585

17

U.S. at 311, because the cameras do not follow Appellants outside of their business premises or even into all areas of those premises.

In sum, Appellants do not have the same expectation of privacy in the recordings as the Court found for cell phone data records in *Carpenter*. And more generally, the Supreme Court and this Court have repeatedly held that operators in a closely regulated industry have a diminished expectation of privacy. *See United States v. Biswell*, 406 U.S. 311, 316 (1972) (warrantless inspection of firearms dealer posed "limited threats to the dealer's justifiable expectations of privacy" as operator in a "pervasively regulated business"); *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312–13 (1978) (firearms industry has "such a history of government oversight that no reasonable expectation of privacy could exist for the proprietor over the stock" of their business (citation omitted)); *Argent Chem. Lab.*, 93 F.3d at 575 ("Persons engaging in pervasively regulated industries have a diminished expectation of privacy."); *Killgore v. City of S. El Monte*, 3 F.4th 1186, 1190 (9th Cir. 2021) (heavy regulation of massage industry creates "diminished expectation of privacy of massage establishment owners"); *United States v. 4,432 Mastercases of Cigarettes, More or Less*, 448 F.3d 1168, 1176 (9th Cir. 2006) (diminished expectation of privacy for those who store property within foreign trade zones). The Court's holding in *Carpenter* is consistent with this principle, as *Carpenter* concerned a search as part of a specific criminal investigation of a particular

18

individual, not a regulation of a closely regulated industry as here.  For this same

reason, Appellants' invocation of *United State v. Jones*, 565 U.S. 400 (2012), is

also inapplicable here.  *See id.* at 402, 404 (finding a search where government

attached GPS tracking device to Jones' wife's vehicle upon suspicion of Jones

trafficking narcotics and used the device to monitor the vehicle's movements).

    In an as-applied challenge, Appellants argue that the surveillance of dealers

who operate out of their homes is uniquely invasive because "the home is entitled

to special constitutional protection." [5]  *See* Opening Br. at 22–23 (citing *Florida v.

Jardines*, 569 U.S. 1, 6 (2013)).  Their citation to Fourth Amendment cases

acknowledging a person's expectation of privacy in their home does not change the

calculus here, for two reasons.  First, *Jardines* is inapposite here, where dealers

have chosen to operate a licensed gun dealership from the otherwise private space

of their homes.  *See id.* at 3–6 (officer's use of drug sniffing dog in the curtilage of

Jardines' home without a warrant was a "search").  They, not the government, are

responsible for that choice.  *See Biswell*, 406 U.S. at 316; *Marshall*, 436 U.S. at

---

[5] Two Appellants are FFLs operating out of their home, but neither have
sufficiently alleged Section 26806 violates their Fourth Amendment rights.
Appellant Richards operates his business in a structure separate from his house, 2-
ER-248, implicating fewer privacy concerns.  And Appellant Vandermeulen has
chosen to operate his firearms business from the same "home office" as his other
business, 2-ER-249, knowing that one of his businesses operates in a highly
regulated industry.

313; *Argent Chem. Lab.*, 93 F.3d at 575; *Killgore*, 3 F.4th at 1191; *Rush v. Obledo*, 756 F.2d 713, 717 (9th Cir. 1985). Second, Section 26806's requirement of a warrant or court order for any access beyond a limited administrative search safeguards the privacy of the dealer and their household. *See* Cal. Pen. Code § 26806(b)(1)–(2). This is in line with *Carpenter*, which held that "the Government must generally obtain a warrant supported by probable cause before acquiring such records" in an investigation of criminal wrongdoing. 585 U.S. at 316. Section 26806 requires the same. *See* Cal. Pen. Code § 26806(b)(2).

### 2. Section 26806 does not turn firearms dealers into state actors

The district court was correct that Appellants cannot state a plausible claim that Section 26806 turns dealers into government actors for Fourth Amendment purposes. *See* 1-ER-23–24. Appellants provide hyperbolic, conclusory assertions that Section 26806 "conscript[s] [dealers] into a mass government surveillance program." Opening Br. at 16. But the statute does no such thing. If compliance with a government program or regulation that entails collection of information was enough to turn private citizens into state agents, almost no government mandate would be permissible.

Appellants argue that Section 26806 converts dealers into state actors under three tests that are used to identify state action in the context of 42 U.S.C. § 1983 claims: "(1) joint action, (2) a symbiotic relationship, or (3) delegation of a public

20

function."  Opening Br. at 16 (citing *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1210–14 (9th Cir. 2002)).  These three tests are of no help to them.

The "joint action" test requires (1) that the private party "be a 'willful participant' with the State" in the challenged activity; and (2) that the private party's "particular actions [be] 'inextricably intertwined' with those of the government."  *Brunette*, 294 F.3d at 1211.  Appellants do not allege that dealers are willful participants in the statutory scheme (indeed, quite the opposite), nor are dealers' actions in simply complying with a regulatory requirement the kind of "substantial cooperation or inextricably intertwined activity" necessary to satisfy the second element.  *See id.* at 1212.

The "symbiotic relationship" test similarly requires "substantial coordination and integration between the private entity and the government."  *Id.* at 1213.  Such a relationship may be shown by, for example, "financial integration" or "the government's exercise of plenary control over the private party's actions."  *Id.* (citations omitted).  Here, FFLs are simply regulated entities.  They are neither integrated with the government nor subject to its plenary control.

Last, the "public function" test may give rise to a conclusion that a private party is a state actor if they are performing an action that is "'traditionally the exclusive prerogative of the state.'"  *Id.* at 1214 (giving as examples holding elections or serving as an international peacekeeping force).  Private parties can,

and do, maintain security cameras and recording systems, as even Appellants have alleged. 2-ER-263 ("Admittedly, many gun shops already have some form of security camera to help deal with break ins and the like that may occur in stores."). Dealers therefore are not performing an exclusively public function by complying with Section 26806. Indeed, the purpose of the recording system is also to "help deal with break ins and the like"—the same purpose as private security systems. *See id.*

More fundamentally, none of these tests can transform the act of recording itself—absent access to the recordings by the government—into a search. *See supra*, Argument I.A.1. *Brunette* addresses whether private actors are acting under color of law. 294 F.3d at 1209. Appellees are unaware of any case suggesting that private parties are conducting a search within the meaning of the Fourth Amendment by recording video, independent of the government's eventual receipt of the footage. *Cf. Carpenter*, 585 U.S. at 320 (the search occurred when the government acquired the data).

Even if FFLs could be considered government actors under the statute, Appellants still cannot make out a Fourth Amendment violation because FFLs are confined by the same statutory limitations as government agents. *See United States v. Wilson*, 13 F.4th 961, 967 (9th Cir. 2021) (Fourth Amendment applies when "a private party's intrusions would have constituted a search had the

22

government conducted it"); *United States v. Sparks*, 265 F.3d 825, 832 (9th Cir. 2001) ("[C]ivilians must be limited to doing what the police had authority to do.") (overruled on other grounds by *United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007)).  Government agents can access the recordings only with a search warrant or other court order, or when conducting an inspection of the licensee's business premises for the purpose of inspecting the system for compliance with the statute, and only if a warrant or court order would not generally be required for that access. Cal. Pen. Code § 26806(b)(1)–(2).  No provision of the statute allows for the FFL owner or employees to use the recordings, and in fact they are expressly prohibited from doing so.  *See id.* § 26806(b) ("A licensee shall not use, share, allow access, or otherwise release recordings, to any person . . .").  Thus, this claim fails.

### 3.    Section 26806 does not effect a physical intrusion

Appellants also have not made out a claim that Section 26806 effects a search under the "unlicensed physical intrusion" test, either facially or as applied. Under this test, "a search occurs when the government 'physically occupies private property for the purpose of obtaining information' [] 'to engage in conduct not explicitly or implicitly permitted' by the property owner." *United States v. Esqueda*, 88 F.4th 818, 823 (9th Cir. 2023) (first quoting *Jones*, 565 U.S. at 404; then quoting *Jardines*, 569 U.S. at 6).  Despite Appellants' contentions, the statute does not allow government agents to "obtain[] information by physically intruding

23

on a constitutionally protected area." *Whalen v. McCullen*, 907 F.3d 1139, 1146 (9th Cir. 2018).

*First*, contrary to Appellants' mischaracterizations, the government itself is not occupying Appellants' property. The government does not house the recordings or own the recording systems—the dealer does. The State is not "collecting" or "gathering" the information, Opening Br. at 15—the dealer is. And Appellants' fears of government agents watching recordings for the purpose of gathering information on a "disfavored group" are both unfounded and speculative.[6] *See id.* at 10. The statute expressly disallows a government agent's access to the recordings at all, except in narrow circumstances for the explicit purposes outlined in the statute. *See* Cal. Pen. Code § 26806(b)(1)–(2). The sole exception allowing government agents to access the recordings without a warrant or court order is subsection (b)(1). Under well-established Fourth Amendment precedent, inspection access is not a physical intrusion because dealers grant agents access to the business premises for those inspections—a condition of their license—and such access is limited to particular areas of the business premises for

---

[6] State and federal law impose similar video surveillance requirements on other industries, undermining any allegations of animus towards the firearms industry specifically. *See* 12 C.F.R. § 326.3 (banking); 4 C.C.R. §§ 12372, 12396 (gaming establishments); 4 C.C.R. §§ 15000.3, 15044, (cannabis businesses, including in-home licensees).

the purpose of ensuring compliance with regulatory requirements.[7]  *See Jardines*, 569 U.S. at 9; Cal. Pen. Code § 26806(b)(1).

*Second*, the statute has neither the purpose nor the effect of "collecting information about everyone who enters, speaks, or interacts on the premises" of FFLs.  Opening Br. at 15.  The statute's purpose is to assist law enforcement in investigations of firearm-related crimes such as straw purchases or thefts from the FFLs, 2-ER-44–45, and strengthen security requirements for licensed firearm dealers,[8]  2-ER-38.  At any rate, the government cannot indiscriminately gather the

---

[7] It is not unconstitutional to condition licensure on compliance with a regulatory scheme.  Appellants cite a non-precedential concurrence in denial of certiorari by Justice Kagan as support for their assertion.  Opening Br. at 17 (quoting *Kaur v. Maryland*, 141 S. Ct. 5, 6 (2020) (Kagan, J., concurring in denial of certiorari)).  But Appellants ignore binding case law upholding conditions imposed upon receipt of a license.  *See, e.g., Colonnade Catering Corp. v. United States*, 397 U.S. 72, 74, 77 (1970) (upholding warrantless inspections as condition of holding a liquor license); *Biswell*, 406 U.S. at 316 (finding that an individual who chooses to accept a license and engages in a pervasively regulated business does so with the knowledge that they could be subject to warrantless inspection).  Appellants also undermine their position in their Fifth Amendment argument, where they concede that they "do not here contest the State's authority to inspect their inventory or enforce licensing conditions."  Opening Br. at 28; *see Cedar Point Nursery v. Hassid*, 594 U.S. 139, 161 (2021) ("[T]he government may require property owners to cede a right of access as a condition of receiving certain benefits, without causing a taking.").

[8] Section 26806 adds an additional measure to strengthen pre-existing security requirements.  *See, e.g.*, Cal. Pen. Code §§ 26890(a) (firearms must be stored in "secure facility" on premises, with a specific rod, cable, lock, and shackle, or in locked fireproof safe or vault on premises), 17110 ("secure facility" must have, for example, steel bars no further than six inches apart covering all windows, heating and air-conditioning secured with steel bars, metal grates, or alarm system).

information Appellants are concerned about—the statute expressly disallows access at all, unless one of the two specific exceptions for government access applies.

**B.    Even if construed as authorizing a search of a dealer's premises, Section 26806 is reasonable under the *Burger* test**

Even if a "search" occurred, firearm dealers like Appellants are subject to the closely regulated industry exception to the warrant requirement, as long recognized by the Supreme Court and this Court.  *Biswell*, 406 U.S. at 316; *Argent Chem. Lab.*, 93 F.3d at 575; *see also Verdun v. City of San Diego*, 51 F.4th 1033, 1039 (9th Cir. 2022), *cert. denied*, 144 S. Ct. 73 (2023).  The district court was correct to follow this precedent when it found that the "significant regulatory framework surrounding the sales of firearms leads to the reasonable conclusion that such dealers are closely regulated businesses that have at least a diminished expectation of privacy under the Fourth Amendment."  3-ER-340 (denying Appellants' preliminary injunction motion).

A search of a business in a closely regulated industry is reasonable if three elements are satisfied: (1) there is "a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made;" (2) "the warrantless inspections must be necessary to further the regulatory scheme;" and (3) "the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant."

26

*New York v. Burger*, 482 U.S. 691, 702–03 (1987) (brackets omitted).  Section 26806 satisfies all three.  1-ER-18–21.

*First*, the government has a substantial interest here, and the district court correctly held that Appellants did "not allege[] a lack of government interest to defeat this element."  1-ER-19–20.  The Supreme Court has found that there is a substantial government interest in preventing violent crime and regulating firearms trafficking.  *Biswell*, 406 U.S. at 315.  This interest applies equally to FFLs who operate their businesses from their home or from a retail space.  Appellants failed to allege that the government's interest in regulating the firearms industry through security measures and compliance inspections is not a substantial interest.  Thus, this factor has been met.

*Second*, the district court was correct that warrantless administrative inspections into FFL's compliance with the law's requirements are necessary to advance the overall regulatory scheme.  1-ER-20.  FFL noncompliance with Section 26806 would "impede the specific enforcement needs of the statutes and regulations governing" FFLs and firearms more broadly.  *Rush*, 756 F.2d at 720.  Administrative inspections are necessary to "deter dealers from failing to comply with a statute otherwise meant to deter gun thefts and regulate firearms."  1-ER-20.  Without compliance, the statute cannot serve its purpose.

And *third*, Appellants cannot—and did not—allege that the statute fails to provide an adequate substitution to the warrant requirement. The statute expressly provides limitations on when the government can access the recordings, restraining government agents in both the time and purpose of the inspection. Additionally, Section 26806 leaves no discretion to the inspecting agents outside of those discrete circumstances in which government agents can access the video recordings. *See* Cal. Pen. Code § 26806(b)(1)–(2).

### C. Section 26806 is not overbroad when applied to at-home dealers

Having failed to establish that Section 26806 is facially unconstitutional, Appellants argue that the law is nevertheless unconstitutionally overbroad to the extent it applies to at-home dealers. A search is overbroad in the Fourth Amendment context if the statute, "absent limiting regulations, do[es] not provide any standards to guide inspectors or restrict the 'unbridled discretion of executive and administrative officers'" and is "far broader than necessary to guarantee" the law's effectiveness. *Rush*, 756 F.2d at 721 (brackets omitted) (quoting *Donovan v. Dewey*, 452 U.S. 594, 599, 603 (1981). But Section 26806 is limited. The plain text of the statute provides that inspection must be done "for the purpose of inspecting the system for compliance" with the statute, Cal. Pen. Code § 26806(b)(1), and as the district court correctly pointed out, this means ensuring that the cameras are installed to record activity that occurs in certain areas of the

28

business premises, *see id.* § 26806(a) (cameras must clearly record interior views of all entries and exits to the premises, all areas where firearms are displayed, and all points of sale). Inspection would not cross into the "private domain of at-home FFLs," 1-ER-22, as it is only concerned with areas where the business is conducted.

The district court also correctly pointed out that if the government wanted to enter the private areas of an at-home FFL, it would need a warrant absent an exception, otherwise the search would violate the Fourth Amendment. *Id.* at 22–23. But Appellants have not alleged that a government agent has entered the private areas of their home, going beyond the business premises without a warrant or that Section 26806 authorizes such a practice.

Appellants focus on *Rush*'s business-hours limitation to the surveillance requirement for at-home daycare providers to argue Section 26806's surveillance requirement is unreasonable. But there are key differences between the daycares in *Rush* and the businesses at issue here. First, at-home daycares and FFLs are subject to very different regulatory schemes, meaning that each industry has differing reasonable expectations of privacy over their business premises. Second, a core purpose of Section 26806 is to deter and facilitate the investigation of firearm theft, which can occur during and after business hours, whereas the central concern in *Rush*—child safety in light of "magnitude of abuses in child day care

29

facilities," 756 F.2d at 720—is limited to the hours children are on the premises. When all the children leave the daycare, continued surveillance is unnecessary. This is materially different than the circumstances here, where firearm thefts can occur before, during, or after business hours. Limiting surveillance to business hours exclusively would undercut one of the primary purposes of the law. *See* 1-ER-23. But what *Rush* ultimately stands for applies here: a limited surveillance regulation of a business—at home or otherwise—does not violate the Fourth Amendment. *See* 756 F.2d at 721.

Appellants also rely too heavily on *Florida v. Jardines* to argue that since at-home FFLs conduct business from their home—a constitutionally protected area—the government cannot "compel[] a citizen to digitally surveil himself 24/7, in his own home." Opening Br. at 23. But *Jardines*' application is limited. There, the Supreme Court did not analyze Fourth Amendment protections for the home in the context of the highly regulated industries exception. Operators certainly have "a strong privacy interest in [their] home," *Rush*, 756 F.2d at 717, but they choose to do business from their home knowing that "regulations govern the operation and condition of [their] home which are different from those covering other private residences," *id.* Appellants cannot escape that reality. *See Marshall*, 436 U.S. at 313 ("'The businessman in a regulated industry in effect consents to the restrictions placed upon him.'" (citation omitted)).

30

****

Therefore, this Court should affirm the district court's dismissal of the Fourth Amendment claims.

## II.   APPELLANTS DO NOT MEET ANY OF THE TESTS FOR A VIABLE FIFTH AMENDMENT TAKINGS CLAIM

The district court was correct when it found Appellants had not alleged a plausible per se takings claim. Appellants did not sufficiently plead either a physical per se taking claim or a regulatory taking claim, either as applied or facially, and cannot do so as a matter of law. As with their Fourth Amendment claim, Appellants rely on exaggerated assertions based on an incorrect reading of the statute, ignoring the limits the law imposes and the nature of the industry in which they operate. First, Appellants lack the full right to exclude necessary for a per se takings claim because they operate in an industry historically subject to extensive regulation. This applies to at-home FFLs and those that operate from a separate retail space. Second, under the *Penn Central* balancing test, Section 26806 does not rise to the level of a regulatory taking.

### A.   Installation of FFL-owned surveillance systems is not a per se physical taking

The district court adopted the Federal Circuit's approach to analyzing physical takings claims in the context of highly regulated industries, and this approach aligns with this Court's precedent. The Ninth Circuit has recognized in analogous contexts that parties that voluntarily participate in certain industries

31

subject to government regulation do not have the same right to exclude as others.
*See, e.g.*, *Ballinger v. City of Oakland*, 24 F.4th 1287, 1293–94 (9th Cir. 2022)
(regulation of the use of landlord's property is not a per se taking); *CDK Global,
LLC v. Brnovich*, 16 F.4th 1266, 1282 (9th Cir. 2021) ("Once property owners
'voluntarily open their property to occupation by others,' they 'cannot assert a *per
se* right to compensation based on their inability to exclude particular
individuals.'" (quoting *Yee v. City of Escondido*, 503 U.S. 519, 530 (1992))).
Supreme Court precedent is squarely in accord. *See City of Escondido*, 503 U.S. at
519–20 (rent control ordinance did not require any physical invasion of property
because landlords "voluntarily rented their land to mobile home owners").

Far from a "boot-strapped exception," Opening Br. at 25, the Federal Circuit
has long recognized that operators in a closely regulated industry do not possess
the full right to exclude by the nature of their voluntary involvement in an industry
historically subject to state and federal regulation.[9]  *See Cal. Hous. Sec., Inc. v.
United States*, 959 F.2d 955, 958 (Fed. Cir. 1992); *Mitchell Arms, Inc. v. United
States*, 7 F.3d 212, 216 (Fed. Cir. 1993) (applying principle to firearms industry);

---

[9] The Federal Circuit is not alone in applying this principle to historically closely
regulated industries.  *See, e.g.*, *White Oak Realty, LLC v. United States Army
Corps of Eng'r*, 746 Fed. App'x 294, 301–02 (5th Cir. 2018) (no property interest
in ability to sell "borrow" to Corp's contracting program because "White Oak
voluntarily entered into a market over which the Corps possessed strong regulatory
control.").

*Modern Sportsman, LLC v. United States*, 145 Fed. Cl. 575, 581–83 (Ct. Fed. Cl. 2019), *aff'd*, No. 2020-1107, 2021 WL 4486419 (Fed. Cir. Oct. 1, 2021) (same).

As they did in the district court, Appellants rely heavily on *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), contending that Section 26806's surveillance system requirement is a physical taking similar to the television cables in *Loretto*. Appellants are correct that a per se taking can occur when the character of the government action is a permanent physical occupation of property. *Id.* at 434. But the district court was correct to agree with the Federal Circuit that "*Loretto* simply does not fit" the circumstances here. 1-ER-24 (quoting *Cal. Hous. Sec.*, 959 F.2d at 959).

Essential to whether a physical taking has occurred is whether the owner of that property possesses an enforceable right to support a takings claim. *Mitchell Arms*, 7 F.3d at 216. In *Loretto*, the Court recognized that the landlord had a "historically rooted expectation of compensation" for interference with the right to exclude. *Loretto*, 458 U.S. at 436, 441. This expectation is absent in the heavily regulated firearms industry; Appellants simply are not in the same position as the landlord in *Loretto*. As such, *Loretto* has limited relevance to highly regulated industries where operators have less than the full bundle of rights. *Cal. Hous. Sec.*, 959 F.2d at 957–58; *see Mitchell Arms*, 7 F.3d at 216; *Modern Sportsman*, 145 Fed. Cl. at 581–83.

33

Appellants suggest that "for *California Housing* to apply, a gun store would have to be under active investigation for multiple violations of California's retail gun laws." Opening Br. at 26. This misses the point. A takings claim where the claimant operates in an industry subject to a history of extensive regulation—be it banking, firearms, or nuclear facilities, *Atlas Corp. v. United States*, 895 F.2d 745, 758 (Fed. Cir. 1990)—merits different considerations, like whether the operator even has the right to exclude at base, not whether the entity is under investigation for violating its regulatory scheme. *See Mitchell Arms*, 7 F.3d at 217 ("'[E]nforceable rights sufficient to support a taking claim against the United States cannot arise in an area voluntarily entered into and one which, from the start, is subject to pervasive Government control.'" (quoting *Mitchell Arms, Inc. v. United States*, 26 Cl. Ct. 1, 5 (Ct. Cl. 1992) (affirming district court's interpretation of Supreme Court precedent in *Bowen v. Pub. Agencies Opposed to Soc. Sec. Entrapment*, 477 U.S. 41, 55 (1986))).

And while Appellants argue *Hendler v. United States*, 952 F.2d 1364 (Fed. Cir. 1991) is more applicable here, *Hendler* did not analyze a takings claim in the context of a highly regulated industry. In *Hendler*, the Federal Circuit found that the Environmental Protection Agency's invasion of private parties' land to install and monitor ground wells was a taking. *Id.* at 1367, 1375, 1378. The private landowners were not participants or operators in an industry subject to historically

34

pervasive government regulation, and thus did have the full right to exclude. *Id.* at 1378. And the Federal Circuit has expressly stated that "*Hendler*'s holding was unremarkable and quite narrow," *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1357 (Fed. Cir. 2002), limiting its application outside of the facts presented in *Hendler* and making it even less relevant here.

Finally, Appellants assert that Section 26806 "allows the government to access, view, and use the recordings at will." Opening Br. at 25. But as noted, the plain text of the statute provides for only two limited circumstances where the government can access the recordings: (1) if the government has obtained a warrant or other court order, or (2) as part of an inspection to ensure compliance with the statute's requirements and for which a warrant is not required. Cal. Pen. Code § 26806(b)(1)–(2). This is hardly "at-will." And to the extent Appellants argue that the right of government agents to access Appellants' property for the purpose of conducting compliance inspections is a taking, Section 26806 does not create that right of access. *See id.* § 26720(a). Appellants have always been subject to compliance inspections, and "[o]nce property owners 'voluntarily open their property to occupation by others,' they 'cannot assert a *per se* right to compensation based on their inability to exclude particular individuals.'" *CDK Global*, 16 F.4th at 1282 (quoting *City of Escondido*, 503 U.S. at 531); *see also Mitchell Arms*, 7 F.3d at 216 (firearms import business "knowingly plac[ed] itself

35

in the governmentally controlled arena of firearms importation" and "cannot be said to possess the right to *exclude*" (emphasis original)).

**B.  Appellants' conclusory and hypothetical allegations cannot support a claim for a regulatory taking under *Penn Central***

Under *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104 (1978), "a regulatory taking may occur—and just compensation is required—when regulatory actions occur that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner with the inquiry focusing directly upon the severity of the burden that the government imposes upon private property rights." *Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1090 (9th Cir. 2015) (quotation marks and brackets omitted).  To determine if a regulatory taking has occurred, courts look to three factors: (1) the "economic impact of the regulation on the property owner"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action."  *CDK Global*, 16 F.4th at 1282 (quoting *Penn Central*, 438 U.S. at 124).  These factors are not a "set formula," but are "factors that have particular significance" to the analysis.  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538 (2005).  Section 26806 does not amount to a regulatory taking under this standard, either facially or as applied to Appellants.

### 1. Appellants failed to plead cognizable economic impact from Section 26806

"[T]he mere loss of some income because of regulation does not itself establish a taking." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018). Consistent with this principle, the cost imposed by a regulation is not determinative under this factor. Rather, economic impact is determined by comparing the total value of the affected property before and after the government action. *Id.* "Projected income streams"—which could be reduced by the cost of complying with a regulation—"can contribute to a method of determining the post-deprivation value of property, but the severity of the loss can be determined only by comparing the post-deprivation value to pre-deprivation value." *Id.*

The district court found that Appellants had adequately alleged economic impact. 1-ER-26–27. But the district court focused solely on the hypothetical cost estimates from Appellants' Amended Complaint, *id.*, and did not engage in the "projected income streams" analysis. If it did, it would have to find that Appellants failed to plead facts sufficient to support this factor because Appellants have not alleged anything about the pre- or post-deprivation value of any of their businesses. 2-ER-248–52, 275–76, 286–87, 300–05, 310. Because Appellants

37

failed to make this fundamental showing, or even claimed that they could, they should not be credited with this element.[10]

> ## 2. The surveillance system requirement does not interfere with Appellants' reasonable investment-backed expectations

Even if the district court was correct in its economic impact analysis, the "primary factor [in *Penn Central* is] the extent to which the regulation has interfered with distinct investment-backed expectations." *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1120 (9th Cir. 2010). This is "an objective analysis." *Bridge Aina Le´a, LLC v. Land Use Comm'n*, 950 F.3d 610, 633 (9th Cir. 2020). The district court correctly held that this factor cuts strongly in favor of Appellee.

Appellants' brief recognizes that they operate in a recognized highly regulated industry. Yet they assert, without supporting authority, that regulation can still interfere with an operator's investment-backed expectations merely "when it departs from past practice and imposes new forms of burden." Opening Br. at 31. This unsupported argument misstates the standard.

Contrary to Appellants' position, this Court consistently considers the extent of regulation in such industries as relevant to the investment-backed expectations factor. As operators in an industry already subject to extensive state and federal

---

[10] Even if this Court agrees with the district court's approach to this factor, the district court's conclusion should be affirmed because it was correct in holding that the other *Penn Central* factors weigh in Appellee's favor.

38

regulation, Appellants "cannot reasonably expect that [their] property will be continually unencumbered by government regulation." *Rancho de Calistoga*, 800 F.3d at 1090; *see also Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 645 (1993) ("[T]hose who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end." (citation omitted)); *CDK Global*, 16 F.4th at 1282 ("As a general matter [], by reason of the State's traditionally high degree of control over commercial dealings, a property owner ought to be aware of the possibility that new regulation might even render his property economically worthless." (quotation marks omitted)). Several Appellants own and operate FFLs, 2-ER-248–52, and to do so, had to complete the licensure application and background check process outlined by California and federal law. To keep their licenses, they must comply with pre-existing reporting, signage, training, and safety and security requirements, *supra* Statement of the Case I.A, and are subject to inspections of their business premises, Cal. Pen. Code § 26720(a). Operators in this industry simply cannot reasonably claim they have an expectation to be free of further regulation.

### 3.    The character of the government action is minimal

Section 26806 constitutes at most only a minimal intrusion on Appellants' business and property interests. *See Bridge Aina Le'a*, 950 F.3d at 635–36. "[T]he

character of the governmental action—for instance whether it amounts to a physical invasion or instead merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good—may be relevant in discerning whether a taking has occurred." *Lingle*, 544 U.S. at 539 (quotation marks omitted). However, "[e]ven if this factor weighs in favor of finding a taking, this factor is not alone a sufficient basis to find that a taking occurred." *Bridge Aina Le'a*, 950 F.3d at 636.

In their Amended Complaint, Appellants characterize Section 26806 as an "installation of a Bentham's Panopticon" and "as tyrannical as it gets." 2-ER-289–90. But these statements are divorced from the plain text of the statute. As the district court observed, there are clear, delineated circumstances in which a government agent can access the recordings, 1-ER-28, despite Appellants' handwaving to the contrary. *See* Opening Br. at 31 ("It is not limited in time, scope, or access."); *id.* at 10 (statute is "indistinguishable from placing a government officer inside every gun store . . with no constraints"); 2-ER-290 (equating Section 26806 to "The Truman Show"). These assertions are no more than exaggerated fears of an all-seeing government, but disagreement with the regulation or a regulatory scheme is not enough to establish government action. Appellants simply cannot make plausible allegations to satisfy this factor.

40

Additionally, as the district court correctly noted, the character of the government action must be viewed in light of the "historical expectation of high regulation" of the firearms industry." 1-ER-28.  In that light, the character of the action is more akin to serving a public purpose than a physical invasion for "government officials to listen and observe political dissidents." 1-ER-28; *see CDK Global*, 16 F.4th at 1283; *see also* 2-ER-55–56 (purpose of statute is to prevent straw purchases and gun theft, and aid in prosecuting those crimes).

Appellants have not stated a claim that Section 26806 is either a physical or regulatory taking, and this Court should affirm the district court's dismissal of Appellants' takings claim.

## III.  APPELLANTS FAIL TO STATE A PLAUSIBLE SPEECH OR ASSOCIATION CLAIM UNDER THE FIRST AMENDMENT

### A.  Appellants' claim that Section 26806 "chills" speech is fatally speculative and subjective

A claim that government action unconstitutionally chills speech protected by the First Amendment requires, at a minimum, a showing that the threatened harm would "'chill a person of ordinary firmness' from continuing to engage in the protected activity." *Ariz. Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (quoting *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016)). "The test is generic and objective." *O'Brien*, 818 F.3d at 933.  "A plaintiff 'may not recover merely on the basis of a speculative 'chill' due to generalized and

41

legitimate law enforcement initiatives.'" *Mendocino Env't Ctr. v. Mendocino Cnty.*, 14 F.3d 457, 464 (9th Cir. 1994) (citation omitted); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) ("'[A]llegations of a subjective chill'" unsupported by any objective actual or threatened harm are inadequate to make out a First Amendment claim) (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)).

Simply, the Amended Complaint does not meet this standard because it fails to identify any objective adverse consequence or threat that could be reasonably feared as a consequence of Appellants' speech.

### 1. The Amended Complaint does not allege any nonspeculative harm that could result from Appellants' speech

The Amended Complaint makes the repeated, conclusory assertion that Section 26806 will necessarily "chill" speech and association. *See, e.g.*, 2-ER-246, 250–51, 264, 267–70, 273, 278–79. In places, this assertion is paired with references to fear of unspecified government "retribution" or "retaliation." 2-ER-250 (citing an individual appellant's "fear of retribution by the government"); 2-ER-273 (suggesting that the recording required by Section 26806 may be a tool "to squelch 'political debate' and enable 'official retaliation' against critics"). Setting aside these vague accusations, nothing in the Amended Complaint or the Opening

Brief identifies *any* harm that could come to an individual as a consequence of their exercise of speech or association rights.

Nor could it. As explained, access to the recordings is strictly limited by statute, and government officials can access the system or its recordings only (1) in an administrative inspection to assess compliance with the statute, or (2) pursuant to warrant or court order. Cal. Pen. Code § 26806(b)(1)–(2). The statute does not allow the kind of "pervasive surveillance" by the government that Appellants allegedly fear. *See* Opening Br. at 33; *see also, e.g.*, 2-ER-269 (alleging chilling effect of "constant government surveillance").

Appellants attempt to minimize these statutory strictures by arguing— without any authority—that the "person of ordinary firmness" test does not assume that the person understands the operation of a statute. Opening Br. at 38. The Court should decline the invitation to give constitutional effect to speculation that individuals will misunderstand the law. As an objective test, the "person of ordinary firmness" standard incorporates all the relevant circumstances. *See O'Brien*, 818 F.3d at 933; *Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006) ("[W]e determine whether a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case"). Here, the careful statutory limits on the government's access to the recordings cannot be ignored.

Appellants next argue that Section 26806 "places restrictions *only* on *gun dealers* (the licensees), not the *government.*"  Opening Br. at 39 (emphasis in original).  The statute itself refutes this assertion.  Section 26806 establishes a general rule precluding anyone—including the government—from accessing the system or recordings.  *Id.* § 26806(b) ("A licensee shall not use, share, allow access, or otherwise release recordings, to any person, except as follows…").  The only exceptions are those enumerated, *see supra*, Statement of the Case I, which each allow limited access in narrow circumstances.

Appellants focus on the first exception, which is the only provision that could require a dealer to provide access to the recording system without a warrant or court order.[11]  *See id.* § 26806(b)(1)–(3).  That exception requires a dealer to provide access to the system *only* to "an agent of the department or licensing authority," *only* while the agent is "conducting an inspection of the licensee's premises," and *only* for "the purpose of inspecting the system for compliance" with

_____

[11] The government may also gain access to the system or its recordings under the second exception, which requires the dealer to allow such access only "pursuant to search warrant or other court order."  *Id.* § 26806(b)(2).  The requirement of a warrant or court order incorporates all the safeguards of the legal process, which are sufficient to protect First Amendment interests.  *See Zurcher v. Stanford Daily*, 436 U.S. 547, 563–68 (1978) (holding that the judicial process required to issue a search warrant adequately protects First Amendment interests); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160–61 (9th Cir. 2010) (parties may assert a First Amendment privilege in response to discovery requests).

Section 26806. *Id.* § 26806(b)(1). As a failsafe, the statute further clarifies that the licensee must allow access in these circumstances "only if a warrant or court order would not generally be required for that access." *Id.*

Relying on rhetorical questions rather than plausible factual allegations, Appellants suggest that government agents must necessarily watch and listen to recordings to determine compliance with the statute. Opening Br. at 39–40. Even assuming arguendo that this assumption is correct, it remains entirely speculative to suppose that the moment of recording that the agent reviews will coincide with protected speech. Even more fanciful speculation is required to conjure a risk of retaliation or harm resulting from this speech—particularly where the statute limits the agent's access to the system to the sole purpose of "inspecting the system for compliance" with statutory requirements. *See* Cal. Pen. Code § 26806(b)(1).

In short, Appellants' fear of retribution requires a supposition that the government "will act unconstitutionally and inflict injury without provocation or legal excuse." *See City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983) (rejecting allegations as impermissibly speculative). Thus, to the extent Appellants allege that Section 26806 could lead to government retribution against FFLs or their patrons for protected speech, *see, e.g.*, 2-ER-250, 2-ER-273, that is precisely the kind of "'unwarranted inference[]'" that is "'insufficient to defeat a motion to dismiss.'" *See Benavidez*, 993 F.3d at 1145 (9th Cir. 2021) (citation omitted).

45

For the same reasons, such unfounded fears would not chill a person of ordinary firmness. Because the audio-visual recording required by Section 26806 does not create any objectively reasonable risk of retaliation for protected speech, or threaten any other objective harm, there is no reason to conclude that a person of ordinary firmness would self-censor.[12] *See also* 1-ER-12 ("In this case, given the plain limitations of § 26806, the allegations in the [Amended Complaint] that *reasonable* patrons may fear retribution is merely speculative.").

The objective nature of the person-of-ordinary-firmness test points to another serious flaw in Appellants' argument: Section 26806 applies to "business premises" licensed for the sale of lethal weapons. *See* Cal. Pen. Code § 26806(a); *O'Brien*, 818 F.3d at 933; *Baltimore Sun*, 437 F.3d at 416 (the test is applied "in light of the circumstances presented in the particular case"). Security monitoring

---

[12] Cases finding a chilled-speech violation under the person-of-ordinary-firmness standard rely on the chilling effect of some kind of adverse action, negative consequence, or threat. *See, e.g.*, *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1055 (9th Cir. 2019) (loss of child custody); *Ariz. Students' Ass'n*, 824 F.3d at 869 (loss of funding); *O'Brien*, 818 F.3d at 933 (university disciplinary proceedings resulting in sanctions); *Irizarry v. Yehia*, 38 F.4th 1282, 1293 (10th Cir. 2022) (physical threat due to officer driving police cruiser "'right at'" plaintiff); *Jones v. Solomon*, 90 F.4th 198, 214–16 (4th Cir. 2024) (transfer to a more dangerous prison, loss of access to a computer class); *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003) (parking tickets contrary to municipal policy) *cited in* Opening Br. at 37; *see also Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (holding that a plaintiff must plead a "sufficiently adverse action to give rise to an actionable First Amendment [retaliation] claim").

46

in such a location falls well within any reasonable person's expectation. As Appellants themselves concede, many FFLs already used similar security systems prior to Section 26806 going into effect. 2-ER-263 ("[a]dmittedly, many gun shops already have some form of security camera. . . "). Given the nature of the industry, a person of ordinary firmness would not be chilled from continuing to exercise their free speech rights in gun shops knowing that the owner maintained an audio-visual recording system with strictly limited uses.

Nor is it necessary to put the question to a jury. *But see* Opening Br. at 37. Though this Court and others have treated application of the person-of-ordinary-firmness standard as a question of fact, *see, e.g.*, *Brodheim v. Cry*, 584 F.3d 1262, 1271, 1274 (9th Cir. 2009); *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002); *but see Baltimore Sun*, 437 F.3d at 416 ("Because our analysis of the adverse impact is objective, it can be resolved as a matter of law"), courts may nonetheless dispense with the issue as a matter of law where the alleged harm or threat is de minimis or entirely speculative, *see, e.g.*, *Douglas v. Reeves*, 964 F.3d 643, 647 (7th Cir. 2020); *see also Laird*, 408 U.S. at 10, 13–14.[13]  Here, the absence of any alleged

---

[13] District courts commonly dismiss complaints where the alleged facts would not plausibly chill a person of ordinary firmness from speech. *See, e.g.*, *Wintrode v. Stoutin*, 2024 WL 4766305, at *3 (D. Idaho Nov. 13, 2024); *Shook v. Cnty. of Hawaii Police Dep't*, 2022 WL 3915566, at *8 (D. Haw. Aug. 31, 2022), *aff'd*, No. 22-16554, 2024 WL 3042395 (9th Cir. June 18, 2024); *Johnson v. Feist*, 2020 WL 6121981, at *7 (C.D. Cal. Sept. 8, 2020), *report and recommendation adopted*,

(continued…)

objective harm or threat based on protected speech means that the Amended

Complaint fails to state a chilled speech claim as a matter of law.

### 2. Speculative fear of surveillance alone does not support a First Amendment claim

Appellants insist that a violation of the First Amendment can be based solely

on a reluctance to speak due to government surveillance, even in the absence of

any objective harm or identifiable threat. *See* Opening Br. at 34–35. This

expansive theory is contrary to First Amendment precedent and admits no

reasonable limiting principle.

*First*, this theory is foreclosed by precedent. The Supreme Court has twice

held that "the mere existence, without more, of a governmental investigative and

data-gathering activity" is insufficient to make out a First Amendment claim where

the sole harm identified by plaintiffs was an alleged subjective "chilling effect."

*Laird*, 408 U.S. at 10, 13–14; *Clapper*, 568 U.S. at 417–18.

Similar to the allegations in the Amended Complaint, the plaintiffs in *Laird*

asserted a "speculative apprehensiveness that the Army may at some future date

misuse the information in some way that would cause direct harm" to the plaintiffs.

408 U.S. at 13. The Supreme Court explained that this fear was at most "a

---

2020 WL 6119511 (C.D. Cal. Oct. 16, 2020); *Dicey v. Hanks*, 2015 WL 4879627, at *5 (E.D. Cal. Aug. 14, 2015), *report and recommendation adopted*, 2015 WL 6163444 (E.D. Cal. Oct. 15, 2015) (collecting cases).

subjective chill" which failed to identify a "specific present objective harm or threat of specific future harm." *Id.* at 13–14; *see also id.* at 11–12 (contrasting cases finding First Amendment violations where the plaintiff suffered or was threatened with denial of admission to the bar, loss of employment, or interception of political mailings). In *Clapper*, the Supreme Court reaffirmed that "'[a]llegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'" 568 U.S. at 418 (quoting *Laird*, 408 U.S. at 13–14).

*Presbyterian Church (USA) v. United States*, 870 F.2d 518 (9th Cir. 1989) does not compel a different outcome. In that pre-*Clapper* case, the Ninth Circuit held that the plaintiff churches had standing to bring a First Amendment challenge to the Immigration and Naturalization Service's surveillance of church services based on alleged organizational harms to the churches. *Id.* at 521–22. As the Court explained, "[t]he alleged effect on the *churches* is not a mere subjective chill on their worship activities; it is a concrete, demonstrable decrease in attendance at those worship activities." *Id.* at 522 (emphasis in original). The Court did not, however, reach the merits of the First Amendment claim. *See id.* at 529. Thus, *Presbyterian Church* cannot stand for the proposition that the First Amendment may be violated by surveillance alone.

49

*Presbyterian Church*, along with other authorities cited by Appellants, is also distinguishable from the instant case in that it involved direct government surveillance.  *See* 870 F.2d at 518 (INS surveillance of church services and bible study classes); *White v. Davis*, 13 Cal. 3d 757, 761–62, 770 (1975) (police surveillance operations at UCLA); *Loc. 309, United Furniture Workers of Am., C.I.O. v. Gates*, 75 F. Supp. 620, 625–26 (N.D. Ind. 1948) (state police surveillance of private union meetings); *Minneapolis Branch of the NAACP v. City of Minneapolis*, 2024 WL 1886759, at *1, *6 (D. Minn. Mar. 29, 2024) (police surveillance on social media combined with harassment on and off-line).  In contrast, Section 26806 requires business licensees selling lethal weapons to maintain an audio-visual recording system on their own business premises.  Cal. Pen. Code § 26806(a).  Government access to the recordings is limited to the narrow exceptions set out in statute.  *Id.* § 26806(b)(1)–(2).

Appellants' theory that free speech may be unconstitutionally chilled based solely on the speaker's subjective fear of surveillance is not only untethered from precedent, it has no logical end-point.  Federal and state regulations impose similar security recording requirements in other commercial settings.  *See* 12 C.F.R. § 326.3 (banking); 4 C.C.R. §§ 12372, 12396 (gambling); 4 C.C.R. §§ 15000.3(c),

50

15044 (cannabis stores).[14]  Patrons may engage in political speech or other protected activity on these companies' premises; Appellants' theory would suggest that all of these laws therefore run afoul of the First Amendment.  Nor would the impacts end there.  For example, the mere presence of police or other security forces on duty at a protest or city council meeting would likewise be vulnerable to First Amendment challenge under Appellants' limitless theory.

The Court should reject Appellants' attempt to rewrite First Amendment law to allow a claim based only on self-censorship due to a merely subjective fear of surveillance.

### 3.    The same analysis applies to firearms dealers who choose to operate out of their homes

In support of their chilled-speech claim, Appellants again highlight the application of Section 26806 to dealers who operate out of their homes.  *See* Opening Br. at 35, 40–41 (citing 2-ER-248, 2-ER-276–77).  Appellants do not argue that a different legal standard or analysis applies to those dealers.  *See id.*  The concession is well taken.  In any event, Appellants have not plausibly alleged

---

[14] Appellants attempt to distinguish those regulations by arguing that the "firearm industry" is "expressly enumerated as a constitutional right."  *See* Opening Br. at 45 & n.5.  Setting aside whether this accurately reflects the Second Amendment, which does not protect any "industry" from business regulations—it also ignores well-established precedent recognizing that gun shops are a highly regulated industry.  *See, e.g.*, *Biswell*, 406 U.S. at 316.  It is also irrelevant, as Appellants voluntarily dismissed their Second Amendment claim.  *See* 1-ER-7.

that Section 26806 unconstitutionally chills speech as applied to the two at-home dealers who are named plaintiffs.

Some FFLs make the choice to operate a business in a highly regulated industry, which involves the sale of lethal weapons, out of their home. 2-ER-248–49, 275. Those dealers, not the government, bear the responsibility for using the otherwise private space for commercial purposes. In setting up a highly regulated business in their home, they "in effect consent[] to the restrictions placed upon [them]."[15] *See Marshall*, 436 U.S. at 313 (citation omitted). As the district court pointed out, "[t]he fact that some dealers may choose to conduct the regulated activity of firearms sales in otherwise private spaces does not shut out the government from carrying out that regulation." 3-ER-329. It would create an intolerable loophole to allow businesses to escape regulation by choosing to conduct their business in a location where the regulation causes them hardship. Accordingly, the as-applied claim that Section 26806 chills the speech of the Appellants who are at-home dealers fails for all the same reasons described above.

---

[15] It is not surprising, then, that the two Appellants who are at-home dealers have chosen to conduct their business in dedicated office spaces (and in Richard's case, in a separate structure from his home). 2-ER-248–49.

### a. Appellants have not stated a plausible claim that Section 26806 unconstitutionally chills free association

Appellants' claim that Section 26806 chills First Amendment free association rights rests on the unsupported and erroneous assumption that "everyone who signs up as a member [of pro-gun organizations] will be monitored and surveilled by the state" due to the statute's requirements. 2-ER-270; *see also, e.g.*, 2-ER-267 (alleging Section 26806's supposed "intrusive surveillance into the realm of political discourse invariably will have a chilling effect on the associational rights" of Second Amendment supporters in firearms dealerships). Appellants have doubled down on this erroneous claim in this Court, arguing that "[n]ow, if Appellants are to introduce themselves within gun stores, the government records who they are." Opening Br. at 43.

This contention is groundless. Section 26806 does not require disclosure of membership in any organization or otherwise compel speech of any kind. As described above, the statute provides that "[a] licensee shall not use, share, allow access, or otherwise release recordings, to any person," including the government, except in the narrow exceptions set out in the statute. Cal. Pen. Code § 26806(b)(1)–(2). Thus, the allegation that "section 26806 quite literally will result in California's creation of a partial list of members of [plaintiff organizations] GOA, GOC, CRPA and SAF" may be disregarded as unfounded, based on the plain language of the statute itself. *See* 2-ER-270; *see also* 1-ER-12 (debunking

53

the suggestion that Section 26806 requires any disclosure of membership). For the same reasons, Appellants' cases requiring a sufficient government justification to support disclosure of membership or donor lists are inapposite. *See Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021) (mandated disclosure to government of organizations' donors); *Shelton v. Tucker*, 364 U.S. 479 480 (1960) (requirement that teachers annually disclose all organizational affiliations and contributions); *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960) (prosecutions for refusal to disclose membership of local NAACP chapters); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) (effort by Alabama to compel disclosure of NAACP membership list).

Appellants briefly contend, without citation or analysis, that the correct standard is whether "Section 26806 chills people of ordinary firmness from freely associating." Opening Br. at 44. Even if that standard applies, however, Appellants' claim would fail for all the reasons set out above, including the absence of any objective harm or threat that could reasonably be feared under Section 26806.

## B. Section 26806 easily passes intermediate constitutional scrutiny

For all the reasons described above, Appellants' claims that Section 26806 unconstitutionally chills speech and association fail at the threshold because they have not plausibly alleged that the statutory scheme would chill a person of

ordinary firmness from protected activity or that it requires a disclosure of organizational affiliations. The Court need go no further to dispose of the claims.

Assuming arguendo that Appellants could satisfy the person-of-ordinary-firmness standard, any burden that Section 26806 imposes on free speech or association rights would nonetheless easily pass First Amendment muster.

Burdens on free speech or association that are "only incidental to the statute's regulation of activity that is not protected by the First Amendment" are examined under intermediate scrutiny. *Free Speech Coal., Inc. v. Paxton*, 145 S. Ct. 2291, 2309 (2025). Intermediate scrutiny is satisfied if a law "'advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests.'" *TikTok Inc. v. Garland*, 145 S. Ct. 57, 67 (2025) (quoting *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 189 (1997)). The law "'need not be the least restrictive . . . means of' serving the State's interest," nor need the Court agree that it is the most appropriate. *Free Speech Coal.*, 145 S. Ct. at 2317 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989)).

Section 26806 easily satisfies these standards. The statute advances important governmental interests in deterring and investigating gun theft and illegal purchases. *See* 1-ER-44, 55–56, 58. Additionally, the law is narrowly tailored to limit government or other private access to the system and recordings,

*see* Cal. Pen. Code § 26806(b), ensuring that it "'does not burden substantially more speech than necessary to further those interests.'" *See TikTok*, 145 S. Ct. at 67 (citation omitted).

### C.  Section 26806 does not implicate the right to speak anonymously

The Amended Complaint alleges that as a result of Section 26806 "there is no possibility that a customer or visitor can speak anonymously with others" in firearms dealerships because "all private conversations will be swept up and monitored by the government." 2-ER-271; *but see* Cal. Pen. Code § 26806(b) (strictly limiting access to the system and recordings). This demonstrably incorrect allegation, and the others like it, fail to state a plausible claim that Section 26806 violates the First Amendment right to anonymous speech.

It is well established that the First Amendment protects a person's right to engage in free speech without disclosing their identity. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995) ("an author's decision to remain anonymous . . . is an aspect of the freedom of speech protected by the First Amendment"); *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 199–200 (1999); *In re Anonymous Online Speakers*, 661 F.3d 1168, 1172–73 (9th Cir. 2011).

That principle, however, is wholly inapposite here. The anonymous speech doctrine addresses regulations on speech or requirements to disclose the identity of anonymous speakers. *See McIntyre*, 514 U.S. at 345 (observing that law requiring

56

handbills and pamphlets to identify their author was a "regulation of pure speech"); *Buckley*, 525 U.S. at 199–200 (striking down law requiring petition circulators to wear name badges); *In re Anonymous Online Speakers*, 661 F.3d at 1171, 1176–78 (applying First Amendment principles in reviewing order compelling disclosure of the identity of three anonymous online commenters); *see also, e.g.*, *John Doe No. 1 v. Reed*, 561 U.S. 186, 194–96 (2010) (analyzing whether law required disclosure of individuals based on their "expressive activity" to determine whether First Amendment protections applied).  In contrast, Section 26806 does not regulate speech and does not require the disclosure of any individual's identity based on their protected speech or expressive activity.

The claim fails for other reasons as well.  Gun store owners or patrons are not engaging in anonymous speech by appearing in commercial spaces and voicing their views during a face-to-face business interaction.  Even if that conduct could be construed as anonymous speech, nothing in Section 26806 requires disclosure of the identities of the speakers to the government or third parties without the protections of a warrant or court order.[16]  And as the district court correctly

_____

[16] At most, that provision could speculatively result in a government inspector incidentally hearing a stray comment while "inspecting the system for compliance" with Section 26806—but determining the identity of the speaker would fall clearly beyond the limited permissible purpose of the access.  *See* Cal. Pen. Code § 26806(b)(1).

observed, "firearm transactions have a long history of being conditioned upon the disclosure of the identities of dealers and purchases," limiting any expectation of privacy that firearms dealers or purchasers could have related to their identity. 1-ER-15 (citing 18 U.S.C. §§ 922(a), 922(t); 27 C.F.R. § 478.124).

### D.   Section 26806 is not invalid under the overbreadth doctrine

The overbreadth doctrine is also inapplicable here.  In the First Amendment context, that doctrine invalidates a law that "punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep,'" unless the law can be sufficiently narrowed through construction. *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003); *Marquez-Reyes v. Garland*, 36 F.4th 1195, 1201 (9th Cir. 2022) (constitutionally defective "overbreadth must 'be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep'" (citation omitted)).  This doctrine primarily concerns laws that regulate or punish speech or other expressive behavior.  *See, e.g.*, *United States v. Hansen*, 599 U.S. 762, 769–70, 781–85 (2023) (applying overbreadth doctrine to analyze constitutionality of criminal solicitation statute); *Arizona Att'ys for Crim. Just. v. Mayes*, 127 F.4th 105, 107 (9th Cir. 2025) (explaining that a plaintiff bringing an overbreadth challenge "must prove that the statute applies unconstitutionally to a substantial amount of speech relative to its constitutional applications" and rejecting a challenge to a statute regulating the speech of

criminal defense attorneys); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944, 949–50 (9th Cir. 2011) (en banc) (applying overbreadth standards to invalidate anti-solicitation ordinance).

Laws that regulate non-expressive conduct could hypothetically implicate the overbreadth doctrine where they "punish a 'substantial' amount of protected free speech" compared to their legitimate applications, but such cases are few and far between. *See Hicks*, 539 U.S. at 123–24 (concluding that a housing authority's trespassing policy which regulated conduct was not overbroad under this test). As the Supreme Court explained, "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Id.* at 124. This is not that rare case. Section 26806 does not regulate or punish any protected free speech or expressive activity, much less a substantial amount. In contrast, the statute legitimately requires 24-hour recording as it is impossible to know in advance when theft or other crime will occur.

## CONCLUSION

The judgment of the district court should be affirmed.

Dated:  July 28, 2025    Respectfully submitted,

          */s/ Anne P. Bellows*

          Anne P. Bellows

          ROB BONTA
           *Attorney General of California*
          THOMAS S. PATTERSON
           *Senior Assistant Attorney General*
          MARK R. BECKINGTON
           *Supervising Deputy Attorney General*
          ANNE P. BELLOWS
          CAROLYN F. DOWNS
           *Deputy Attorneys General*

## STATEMENT OF RELATED CASES

The State is not aware of any related cases, as defined by Ninth Circuit Rule

28-2.6, that are currently pending in this Court and are not already consolidated

here.

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | No. 25-693

I am the attorney or self-represented party.

**This brief contains** | 13,988 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

🔘 complies with the word limit of Cir. R. 32-1.

⚪ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⚪ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

⚪ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

⚪ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
   ☐ it is a joint brief submitted by separately represented parties.
   ☐ a party or parties are filing a single brief in response to multiple briefs.
   ☐ a party or parties are filing a single brief in response to a longer joint brief.

⚪ complies with the length limit designated by court order dated [        ].

⚪ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Anne P. Bellows | **Date** | 07/28/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                    62                    *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I certify that on July 28, 2025, I electronically filed the foregoing document with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the court's Appellate Case Management System (ACMS).  I certify that all other participants in this case are registered ACMS users and that service will be accomplished by the Appellate Case Management System.

Dated:  July 28, 2025                              *s/ Anne P. Bellows*

# ADDENDUM

No. 25-693

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

———————

ADAM RICHARDS, *et al.*,

*Plaintiffs-Appellants*,

V.

GAVIN NEWSOM., IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF CALIFORNIA *et al.*,

*Defendants-Appellees.*

———————

## On Appeal from the United States District Court for the Central District of California
No. 8:23-cv-02413-JVS-KES
The Honorable James V. Selna, Judge

———————

## APPELLEE'S ADDENDUM

———————

ROB BONTA
*Attorney General of California*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*

ANNE P. BELLOWS
CAROLYN F. DOWNS
*Deputy Attorneys General*
MARK R. BECKINGTON
*Supervising Deputy Attorney General*

CALIFORNIA DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
(415) 510-3847
Anne.Bellows@doj.ca.gov
*Attorneys for Defendant and Appellee*

July 28, 2025

## TABLE OF CONTENTS

<u>Description</u>                                                                                               <u>Page</u>

United States Constitutional Amendments
    Amendment I ....................................................................................A-1
    Amendment IV ..................................................................................A-2
    Amendment V ...................................................................................A-3

California Penal Code
    § 26806.............................................................................................A-4

United States Code Annotated
  Constitution of the United States
    Annotated
      Amendment I. Religion; Speech and the Press; Assembly; Petition

U.S.C.A. Const. Amend. I

Amendment I. Establishment of Religion; Free Exercise of Religion; Freedom
of Speech and the Press; Peaceful Assembly; Petition for Redress of Grievances

Currentness

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

<Historical notes and references are included in the full text document for this amendment.>

<For Notes of Decisions, see separate documents for clauses of this amendment:>

<USCA Const Amend. I--Establishment clause; Free Exercise clause>

<USCA Const Amend. I--Free Speech clause; Free Press clause>

<USCA Const Amend. I--Assembly clause; Petition clause>

U.S.C.A. Const. Amend. I, USCA CONST Amend. I
Current through P.L. 119-18. Some statute sections may be more current, see credits for details.

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

(82 of 85), Page 82 of 85    Case: 25-693, 07/28/2025, DktEntry: 23.1, Page 82 of 85

Amendment IV. Searches and Seizures; Warrants, USCA CONST Amend. IV-Search...

United States Code Annotated
   Constitution of the United States
      Annotated
         Amendment IV. Searches and Seizures; Warrants

U.S.C.A. Const. Amend. IV-Search and Seizure; Warrants

Amendment IV. Searches and Seizures; Warrants

Currentness

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

<Historical notes and references are included in the full text document for this amendment.>

<For Notes of Decisions, see separate documents for this amendment.>

U.S.C.A. Const. Amend. IV-Search and Seizure; Warrants, USCA CONST Amend. IV-Search and Seizure; Warrants
Current through P.L. 119-18. Some statute sections may be more current, see credits for details.

**End of Document**                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

(83 of 85), Page 83 of 85     Case: 25-693, 07/28/2025, DktEntry: 23.1, Page 83 of 85

Amendment V. Grand Jury Indictment for Capital Crimes;..., USCA CONST Amend. V

United States Code Annotated
    Constitution of the United States
        Annotated
            Amendment V. Grand Jury; Double Jeopardy; Self-Incrimination; Due Process; Takings

U.S.C.A. Const. Amend. V

Amendment V. Grand Jury Indictment for Capital Crimes; Double Jeopardy;
Self-Incrimination; Due Process of Law; Takings without Just Compensation

Currentness

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

<Historical notes and references are included in the full text document for this amendment.>

<For Notes of Decisions, see separate documents for clauses of this amendment:>

<USCA Const. Amend. V--Grand Jury clause>

<USCA Const. Amend. V--Double Jeopardy clause>

<USCA Const. Amend. V--Self-Incrimination clause>

<USCA Const. Amend. V-- Due Process clause>

<USCA Const. Amend. V--Takings clause>

U.S.C.A. Const. Amend. V, USCA CONST Amend. V
Current through P.L. 119-18. Some statute sections may be more current, see credits for details.

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Penal Code (Refs & Annos)
    Part 6. Control of Deadly Weapons (Refs & Annos)
      Title 4. Firearms (Refs & Annos)
        Division 6. Sale, Lease, or Transfer of Firearms (Refs & Annos)
          Chapter 2. Issuance, Forfeiture, and Conditions of License to Sell, Lease, or Transfer Firearms at Retail (Refs & Annos)
            Article 2. Grounds for Forfeiture of License (Refs & Annos)

West's Ann.Cal.Penal Code § 26806

§ 26806. Digital video surveillance system; requirements; access to recordings; signage

Currentness

(a) Commencing January 1, 2024, a licensee shall ensure that its business premises are monitored by a digital video surveillance system that meets all of the following requirements:

(1) The system shall clearly record images and, for systems located inside the premises, audio, of the area under surveillance.

(2) Each camera shall be permanently mounted in a fixed location. Cameras shall be placed in locations that allow the camera to clearly record activity occurring in all areas described in paragraph (3) and reasonably produce recordings that allow for the clear identification of any person.

(3) The areas recorded shall include, without limitation, all of the following:

(A) Interior views of all entries or exits to the premises.

(B) All areas where firearms are displayed.

(C) All points of sale, sufficient to identify the parties involved in the transaction.

(4) The system shall continuously record 24 hours per day at a frame rate no less than 15 frames per second.

(5) The media or device on which recordings are stored shall be secured in a manner to protect the recording from tampering, unauthorized access or use, or theft.

(6) Recordings shall be maintained for a minimum of one year.

(7) Recorded images shall clearly and accurately display the date and time.

(8) The system shall be equipped with a failure notification system that provides notification to the licensee of any interruption or failure of the system or storage device.

(b) A licensee shall not use, share, allow access, or otherwise release recordings, to any person except as follows:

(1) A licensee shall allow access to the system to an agent of the department or a licensing authority conducting an inspection of the licensee's premises, for the purpose of inspecting the system for compliance with this section, and only if a warrant or court order would not generally be required for that access.

(2) A licensee shall allow access to the system or release recordings to any person pursuant to search warrant or other court order.

(3) A licensee may allow access to the system or release recordings to any person in response to an insurance claim or as part of the civil discovery process, including, but not limited to, in response to subpoenas, request for production or inspection, or other court order.

(c) The licensee shall post a sign in a conspicuous place at each entrance to the premises that states in block letters not less than one inch in height:

"THESE PREMISES ARE UNDER VIDEO AND AUDIO SURVEILLANCE. YOUR IMAGE AND CONVERSATIONS MAY BE RECORDED."

(d) A licensee shall, on an annual basis, provide certification to the department, in a manner prescribed by the department, that its video surveillance system is in proper working order.

(e) This section does not preclude any local authority or local governing body from adopting or enforcing local laws or policies regarding video surveillance that do not contradict or conflict with the requirements of this section.

**Credits**

(Added by Stats.2022, c. 995 (S.B.1384), § 2, eff. Jan. 1, 2023.)

West's Ann. Cal. Penal Code § 26806, CA PENAL § 26806
Current with urgency legislation through Ch. 45 of 2025 Reg.Sess. Some statute sections may be more current, see credits for details.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.