Case No. 25-693

In the United States Court of Appeals
for the Ninth Circuit

ADAM RICHARDS, et al.,
*Plaintiffs-Appellants*,

v.

GAVIN NEWSOM,
in his official capacity as Governor of the State of California,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Central District of California
Case No. 8:23-cv-02413 JVS (KESx)

**APPELLANTS' REPLY BRIEF**

Robert J. Olson
WILLIAM J. OLSON, P.C.
370 Maple Ave. W., Suite 4
Vienna, VA 22180
(703) 356-5070
rob@wjopc.com

C.D. Michel
Anna M. Barvir
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
(562) 216-4444
cmichel@michellawyers.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
(601) 852-3440
stephen@sdslaw.us

Donald Kilmer
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Rd.
Caldwell, Idaho 83607
(408) 264-8489
don@dklawoffice.com

*Attorneys for Plaintiffs-Appellants*

September 17, 2025

# TABLE OF CONTENTS

**Page**

Table of Contents ................................................................................................ ii

Table of Authorities ......................................................................................... iv

Summary of Argument ..................................................................................... 1

Argument .............................................................................................................. 2

I.    Appellants Plausibly Stated a Fourth Amendment Claim ................................... 2

    A.    Government-Mandated Surveillance of Private Property Is a "Search." . 2

        1.    The Fourth Amendment is supposed to be an obstacle to permeating police surveillance ........................................................ 2

        2.    The government physically intrudes private property when it compels the installation of surveillance equipment on it. .............. 6

    B.    Perpetual, Unparticularized Surveillance of a Constitutionally Protected Industry Fails the *Burger* Test. ....................................................... 8

    C.    Section 26806 Is Unconstitutionally Overbroad. .................................. 10

II.    Appellants Plausibly Stated a Fifth Amendment Claim ................................. 11

    A.    Section 26806's Dealer-Installed Surveillance Requirement Constitutes a Per Se Physical Taking. ................................................................. 11

    B.    Section 26806's Dealer-Installed Surveillance Requirement Constitutes a Regulatory Taking ........................................................................... 14

        1.    The "economic impact" factor "tilts strongly in Plaintiffs' favor," a point the State did not appeal ...................................................... 14

        2.    Section 26806 interferes with Appellants' investment-backed expectations. .............................................................................. 15

        3.    Section 26806 physically invades Appellants' private property.... 16

III.    Appellants Plausibly Stated a First Amendment Claim ...................................... 17

A.  Section 26806 Chills Appellants' Rights to Free Speech and
    Association. ................................................................................ 17

B.  Section 26806 Fails Under "Intermediate Scrutiny." .............................. 21

C.  Section 26806 Implicates the Right to Speak Anonymously. .................. 21

D.  Section 26806 Is Unconstitutionally Overbroad. .................................... 22

Conclusion ............................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents,*
  824 F.3d 858 (9th Cir. 2016) ............................................................... 18

*Ashcroft v. Iqbal,*
  556 U.S. ˙ (2009) ............................................................................... 9

*Atlas Corp. v. United States,*
  895 F.2d 745 (Fed. Cir. 1990) ............................................................ 11

*Ballinger v. City of Oakland,*
  24 F.4th 1287 (9th Cir. 2022) ............................................................ 11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................ 9

*Bennett v. Schmidt,*
  153 F.3d 516 (7th Cir. 1998) ............................................................... 9

*Boyd v. United States,*
  116 U.S. 616 (1886) ............................................................................ 4

*Cal. Hous. Sec., Inc. v. United States,*
  959 F.2d 955 (Fed. Cir. 1992) ............................................................ 12

*Carpenter v. United States,*
  585 U.S. 296 (2018) ................................................................. 1, 2, 3, 4

*CDK Glob. LLC v. Brnovich,*
  16 F.4th 1266 (9th Cir. 2021) ....................................................... 11, 12

*City of Cincinnati v. Discovery Network,*
  507 U.S. 410 (1993) ........................................................................... 21

*City of Los Angeles v. Patel,*
  576 U.S. 409 (2015) ............................................................................ 5

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ..................................................................... 19, 20

*Colony Cove Props., LLC v. City of Carson*,
    888 F.3d 445 (9th Cir. 2018)................................................14, 15, 16

*Corngold v. United States*,
    367 F.2d 1 (9th Cir. 1966) ...........................................................6, 7

*Florida v. Jardines*,
    569 U.S. 1 (2013)...........................................................4, 5, 11, 20

*Free Speech Coal., Inc. v. Paxton*,
    145 S. Ct. 2291 (2025) ...................................................................21

*Laird v. Tatum*,
    408 U.S. 1 (1972) ............................................................................19

*Lingle v. Chevron U.S.A., Inc.*,
    544 U.S. 528 (2005)...................................................................15, 16

*Loretto v. Teleprompter Manhattan CATV Corp.*,
    458 U.S. 419 (1982)...................................................................12, 13

*Marshall v. Barlow's, Inc.*,
    436 U.S. 307 (1978)........................................................................20

*Mitchell Arms, Inc. v. United States*,
    7 F.3d 212 (Fed. Cir. 1993) ..........................................................12

*Mod. Sportsman, LLC v. United States*,
    145 Fed. Cl. 575 (2019) ................................................................12

*Murr v. Wisconsin*,
    582 U.S. 383 (2017)........................................................................16

*New York v. Burger*,
    482 U.S. 691 (1987)..........................................................................8

*Penn Cent. Transp. Co. v. New York City*,
    438 U.S. 104 (1978)........................................................................14

*Perry v. Schwarzenegger*,
    591 F.3d 1126 (9th Cir. 2010).......................................................17

*Pleasant v. Lovell*,
    876 F.2d 787 (10th Cir. 1989)......................................................6, 7

*Presbyterian Church (USA) v. United States*,
870 F.2d 518 (9th Cir. 1989)................................................................ 20

*Rush v. Obledo*,
756 F.2d 713 (9th Cir. 1985)....................................................4, 8, 9, 10

*TikTok Inc. v. Garland*,
145 S. Ct. 57 (2025).............................................................................. 21

*United States v. Biswell*,
406 U.S. 311 (1972)........................................................................ 8, 16

*United States v. Carbajal*,
956 F.2d 924 (9th Cir. 1992)................................................................. 9

*United States v. Di Re*,
332 U.S. 581 (1948)........................................................................... 4, 5

*United States v. Jones*,
565 U.S. 400 (2012)........................................................................ 7, 18

*United States v. Nerber*,
222 F.3d 597 (9th Cir. 2000)............................................................... 18

*United States v. Smith*,
110 F.4th 817 (5th Cir. 2024) ............................................................... 3

*Whitaker v. Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021)............................................................... 9

*Yee v. City of Escondido*,
503 U.S. 519 (1992)............................................................................. 11

**Statutes**

18 U.S.C. § 2511 ................................................................................... 22

Cal. Penal Code § 26806 ...............................................................passim

**Rules**

Fed. R. Civ. P. 8 ................................................................................... 14

## SUMMARY OF ARGUMENT

In adopting the Constitution, a "central aim of the Framers was to place obstacles in the way of a too permeating police surveillance." *Carpenter v. United States*, 585 U.S. 296, 305 (2018) (quotation omitted). California's defense of Penal Code Section 26806 tramples that foundational principle. The State treats Section 26806 as if it were just another administrative inspection of a "closely regulated industry," while in reality the statute is something altogether different. Section 26806 effectuates perpetual, government-mandated audiovisual surveillance of every entry, exit, conversation, and association at a firearm dealer's premises—*including within the home*. That is not regulation. It is search, and an Orwellian one at that. And under both the privacy-based and property-based approaches to the Fourth Amendment, it is per se unreasonable.

The State's attempt to defend Section 26806 under the Fifth Amendment is equally unavailing. Appellants already operate under an extensive regulatory regime, and they do not challenge those requirements here. What they challenge is the State's imposition of novel, intrusive, and costly surveillance obligations that upend settled expectations and strip property owners of the right to exclude perpetual government monitoring. The State's cases do not speak to that reality, and its invocation of regulatory burdens cannot justify the uncompensated appropriation at issue here.

Nor can the State evade the obvious First Amendment harms. Section 26806 chills speech, association, and anonymous expression the moment the cameras are installed. Retaliation is not required; compelled surveillance *itself* is a First Amendment injury. The State's effort to reframe Appellants' claims as *retaliation* ignores binding precedent holding that surveillance and compelled disclosure alter how people speak, meet, and organize. So too is the State's repeated attempt to portray Section 26806's harm as only occurring when the government stops by to collect the videotapes.

1

Again, the harm occurs when the surveillance occurs. The statute chills not only speech in gun shops, but also private association and conversation within the home—precisely the kinds of freedoms the First Amendment protects most.

In short, Section 26806 crosses constitutional boundaries on every front: It mandates continuous searches, effects uncompensated takings, and chills core expressive freedoms. The judgment below should be reversed.

## ARGUMENT

### I. Appellants Plausibly Stated a Fourth Amendment Claim

#### A. Government-Mandated Surveillance of Private Property Is a "Search."

##### 1. The Fourth Amendment is supposed to be an obstacle to permeating police surveillance.

The State denies Section 26806's surveillance mandate is a "search" under the Fourth Amendment, arguing that firearm dealers operate in a "closely regulated industr[y]" with a "diminished expectation of privacy." Appellee's Answering Brief ("A.A.B.") at 15. The State also disputes that Section 26806's "recording requirement is a search at the moment of recording," recasting the "search" as only the government's subsequent "access to the system." *Id.* Both arguments fail.

First, the State claims that *Carpenter*, refutes Appellants' argument that "the search occurs upon the 'creation' of the recordings," pointing to language that it was the "'[g]overnment's acquisition of the cell-site records" that constituted a search, "not the creation of the records themselves." A.A.B.16 (quoting *Carpenter*, 585 U.S. at 316). But the collection of data in *Carpenter* was not mandated by the government, while Section 26806's constant audiovisual surveillance is. 585 U.S. at 301. There, wireless carriers voluntarily collected cell-site location information ("CSLI") for their own business purposes, and the government subsequently sought access to it. *Id.* at

2

301, 306. Under Section 26806, as a condition of being licensed to sell firearms, California mandates that dealers record data that is "deeply revealing," and the "nature of its collection" is both "inescapable and automatic." *Id.* at 320. Under *Carpenter*, Section 26806 plainly effectuates a "search" the moment the government demands that the audiovisual data be recorded—and then adds insult to injury by requiring the FFL to fund the purchase and operation of the surveillance equipment and give up retail space to house the equipment for the (almost) exclusive use of the government. *See* Part II, *infra*.

As the Fifth Circuit recently put it, the State's theory is "breathtaking": Law enforcement cannot "flaunt the Fourth Amendment by simply offloading their *act* of 'searching' on to a third party, and waiting to see if that third party's search produces any fruit." *United States v. Smith*, 110 F.4th 817, 838 n.12 (5th Cir. 2024). The "Supreme Court has clearly stated that the Fourth Amendment protects against *both* searches *and* seizures 'effected by a private party … act[ing] as an instrument or agent of the Government.'" *Id.* The "fact that such information is gathered by a third party does not make it any less deserving of Fourth Amendment protection." *Carpenter*, 585 U.S. at 320.

Second, the State's attempt to minimize the intrusiveness of Section 26806's mandate, in comparison to the challenged conduct in *Carpenter*, only highlights its severity. The State notes that CSLI data in *Carpenter* "reveal[ed] a moment-by-moment record of … every aspect of the owner's life." A.A.B.17. Yet Section 26806's continuous monitoring of all entrances, exits, and points of sale—*often within a dealer's private residence (see* 2-ER-248-49, 276)—indisputably reveals the same intrusion. Unlike CSLI, which merely reveals location, Section 26806's mandate directly captures speech, movements, and activities. It may not follow home-based firearm dealers to the grocery store or the movies, but it surveils them *within their own home*, a place that,

3

when "it comes to the Fourth Amendment, … is first among equals." *Florida v. Jardines*, 569 U.S. 1, 6 (2013). What's more, the information collected here is far more revealing—CSLI requires the government to *infer* activities based on location data, while Section 26806 captures the very activities themselves. *Carpenter* made clear that the Founders understood the Fourth Amendment "to secure 'the privacies of life' against 'arbitrary power.'" 585 U.S. at 305. Their "central aim … was to place obstacles in the way of a too permeating police surveillance." *Id.* (quotations omitted). At no point does the State engage with this reality.

But Appellants have a reasonable expectation of privacy according to *both* of these "Founding-era understandings." *Id.* First, Section 26806's in-home surveillance mandate arbitrarily invades "the privacies of life," which is apparent from the lack of any temporal limitation on when a home is being operated *as a business*.[1] Yet the Fourth Amendment "appl[ies] to all invasions on the part of the government … [in] a man's home," including "the invasion of his indefeasible right of personal security, personal liberty and private property." *Boyd v. United States*, 116 U.S. 616, 630 (1886). Appellants have a reasonable expectation of privacy in their home life, just as the Founders did. Second, constant surveillance within the home is *by definition* "a too permeating police surveillance." *United States v. Di Re*, 332 U.S. 581, 595 (1948). If in-home surveillance is not classified as *the most permeating* type of surveillance, then there are no boundaries against such intrusions. But the Founders "designed our Constitution to place obstacles in the way," even if this makes "law enforcement … more difficult and uncertain" or risks "the escape of some criminals from punishment." *Id.* "[P]ermeating" surveillance in the home is the far "greater danger,"

---

[1] *Cf. Rush v. Obledo*, 756 F.2d 713, 721 (9th Cir. 1985) (emphases added) ("A family day care home is a business *only when* children … are present and *at all other times is a private residence*. … Warrantless inspections are permissible … *only when* the home is being operated as a family day care business.").

4

*id.*, and Appellants have a reasonable, Fourth Amendment expectation to be free from this kind of intrusion.

Next, the State points to the firearm industry purportedly being a "closely regulated industry"[2] in which "operators … have a diminished expectation of privacy." A.A.B.18. But a "diminished expectation of privacy" is not the only inquiry under the Fourth Amendment after *Carpenter*. Even with the power to conduct occasional administrative inspections as part of the regulatory process, the Fourth Amendment does not tolerate permeating and continual surveillance. The State's string of cases about a regulated industry's diminished privacy expectations says nothing about the nature of an intrusion that fails to comport with the reasonableness demanded by the Fourth Amendment. *See* A.A.B.18.

Finally, the State takes issue with Appellants' as-applied challenge[3] to "the surveillance of dealers who operate out of their homes." A.A.B.19. The State insists that the home's "special constitutional protection," A.O.B.22, is inapplicable because home-based dealers "have chosen to" operate in the industry and because Section 26806 requires "a warrant or court order for any access beyond a limited administrative search." A.A.B.19-20. The State is wrong on both counts. First, Appellants did not "choose to" enter the industry with Section 26806 already in effect. Section 26806 was imposed only recently, and none of California's existing licensing requirements approaches the pervasiveness of this novel surveillance mandate. *See* A.A.B.6-8 (describing California's regulatory scheme); *cf.* A.O.B.30

---

[2] Appellants continue to "dispute[] the continuing validity of this 'exception' after *Jones*, *Jardines*, and the Supreme Court's recent Second Amendment precedents." A.O.B.18 n.3.

[3] The State primarily relies on the "highly regulated industry" exception to claim that "Section 26806 does not facially violate the Fourth Amendment." A.A.B.10; *see also id.* at 13. But "[t]he Court's precedents demonstrate not only that facial challenges to statutes authorizing warrantless searches [of highly regulated industries] can be brought, but also that they can succeed." *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015). Indeed, *Patel* rejected the argument that, merely because "hotels are 'closely regulated' … the ordinance is facially valid." *Id.* at 424.

5

("Section 26806 upends their settled expectations by imposing novel, costly, and intrusive obligations."). One cannot have a "diminished expectation of privacy" from a surveillance mandate that did not exist when they entered the industry. And second, Section 26806's purported limitations on "access" do not "safeguard[] the privacy of the dealer and their household," A.A.B.20, from audiovisual recording itself. Digital surveillance and recording is a "search" under the Fourth Amendment, and Appellants operating a business in their homes have a reasonable expectation of privacy to be free from it.

**2. The government physically intrudes private property when it compels the installation of surveillance equipment on it.**

The State likewise denies that Section 26806 constitutes a "search" under the Fourth Amendment's property-rights approach. A.A.B.23-26. But the State's arguments strain credulity.

First, the State claims that, because "the government itself" is not physically collecting or housing the surveillance data, Section 26806's surveillance infrastructure cannot constitute a physical occupation of Appellants' property. A.A.B.24. But whether the government itself installs a monitoring device or compels Appellants to do so, the end result is the same—a government-compelled physical occupation of private property for the purpose of obtaining information. The State offers no authority to suggest a constitutional difference between a physical intrusion *conducted by* the government and one that is *coerced by* it. To the contrary, "if the government coerces, dominates or directs the actions of a private person, a resultant search and seizure may implicate the guarantees of the fourth amendment." *Pleasant v. Lovell*, 876 F.2d 787, 796 (10th Cir. 1989). This is especially true when a private actor "participated in the search solely to serve the purposes of the government." *Corngold v. United States*, 367 F.2d 1, 5 (9th Cir. 1966). Here, not only did the government "kn[o]w of" the surveillance—indeed, the statute mandates it—but also an FFL does not

6

surveil itself and its customers "to further [its] own ends." *Pleasant*, 876 F.2d at 797. Rather, the FFL is "expressly prohibited from … us[ing] the recordings." A.A.B.23. Here, the government—not the FFL—is responsible for the search conducted by Section 26806.

Second, the State claims Section 26806 is not a physical intrusion "for the purpose of obtaining information" because "[t]he statute's purpose is to assist law enforcement … and strengthen security requirements." A.A.B.23, 25. But even if information gathering is for some government "purpose" and is not "indiscriminate,"[4] A.A.B.25, a physical intrusion (and therefore a search) still has occurred. *See United States v. Jones*, 565 U.S. 400, 415 (2012) (Sotomayor, J., concurring) ("even short-term monitoring"—i.e., not "indiscriminate"—is still a search); *id.* at 410 ("an officer's momentary reaching into the interior of a vehicle" is a search).

Third, the State insists that "the statute expressly disallows" government access outside of "two specific exceptions." A.A.B.26. This claim *permeates* the State's brief. *See id.* at 1, 12, 28-29, 35, 43-44, 45-46, 50. But Appellants already explained the *opposite* is true. *See* A.O.B.38-39. Section 26806 permits virtually unlimited government access to the recordings, which at any time under the guise of an "administrative inspection" can simply be copied to a flash drive for later analysis (or abuse).

Section 26806's surveillance regime plainly constitutes a "search" under the Fourth Amendment's property-rights approach, and the district court erred in holding otherwise.

---

[4] This is simply *not* true, as Section 26806(a) requires 24/7/365 video capture of "all entries or exits to the premises" and "points of sale," as well as "audio[] of the area." Cal. Penal Code §§ 26806(a)(3), (a)(1). This broad sweep is the very definition of indiscriminate.

**B.     Perpetual, Unparticularized Surveillance of a Constitutionally Protected Industry Fails the *Burger* Test.**

The State claims that Section 26806 satisfies all three elements of the reasonability test for searches in "closely regulated industries"[5] articulated in *New York v. Burger*, 482 U.S. 691 (1987). A.A.B.26-28. In fact, Section 26806 fails each element. *See* A.O.B.18-22.

First, the State claims it has a "substantial interest" in Section 26806's surveillance regime because the Supreme Court "has found that there is a substantial government interest in preventing violent crime and regulating firearms trafficking." A.A.B.27 (citing *United States v. Biswell*, 406 U.S. 311, 315 (1972)). But *Biswell* concerned an administrative compliance inspection "*during business hours*." 406 U.S. at 311 (emphasis added). To the extent the State has some "substantial" interest in regulating firearm dealers, that interest could arguably extend only when they are operating *as firearm dealers*. The State has no interest, "substantial" or otherwise, in mandating surveillance recordings of Appellants returning home after a night out with a spouse. *Cf. Rush*, 756 F.2d at 721 ("Warrantless inspections are permissible … only when the home is being operated as a family day care business."). To claim otherwise endorses an approach with no limiting principle.

Second, the State asserts vaguely that Section 26806 is "necessary to advance the overall regulatory scheme." A.A.B.27. But the "State has not explained why constant surveillance of non-transactional behavior is needed to trace firearms or verify legal sales," A.O.B.21, and it once again fails to do so here. Indeed, it is difficult to claim that round-the-clock monitoring of non-business activity is "necessary" when

---

[5] Again, the "highly regulated industries" exception to the warrant requirement is a construct of the "reasonable expectation of privacy" regime, which cannot provide a similar workaround to the Supreme Court's renewed focus on private property rights. In any event, no case applying the *Burger* test has ever approved of pervasive audiovisual surveillance within the home not bounded by time, space, or purpose. *See Rush*, 756 F.2d at 721.

California "govern[s] nearly every aspect of firearms sales" already and did so for decades without Section 26806. A.A.B.7. Were it otherwise, the State could claim it is "necessary" to monitor Appellants' cellular phones to ensure that no illicit firearm transactions take place. After all, "[w]ithout compliance, the statue cannot serve its purpose." A.A.B.27.

Third, the State claims Section 26806 "provide[s] an adequate substitution to the warrant requirement" because the "statute expressly provides limitations." A.A.B.28. But again, an analysis of the text belies the State's promises of "limitations" and "no discretion." *Id.*; *see* A.O.B.38-40. Moreover, any "limitations" on subsequent *use* do not cure the initial "search" that occurs when California conscripts firearm dealers to *record* audio and video on its behalf. That forced search has no adequate substitute to the warrant requirement—rather, it is mandated universally and perpetually for all dealers, without any suspicion or particularity at all.

The State claims repeatedly that Appellants failed to "allege" specifics about each of the *Burger* test elements. A.A.B.27-28. But there is no such requirement: "Taken together, *Iqbal* and *Twombly* require well-pleaded facts, not legal conclusions, (citation omitted), that 'plausibly give rise to an entitlement to relief (citation omitted).'" *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 679, 662 (2009)). Indeed, "[c]omplaints need not plead law or match facts to every element of a legal theory." *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). Plus, "[t]he burden is on the Government … to show the reasonableness of a warrantless search." *United States v. Carbajal*, 956 F.2d 924, 930 (9th Cir. 1992). The State failed to bear its burden

9

here, and the district court plainly erred by imposing this heightened pleading requirement on Appellants.[6]

## C.    Section 26806 Is Unconstitutionally Overbroad.

The State denies Section 26806's overbreadth by once again insisting that the only "searches" that occur are the "inspection … 'for the purpose of … compliance'" or entry with "a warrant absent an exception." A.A.B.28-29. But again, because the government-compelled *recording* of Appellants' premises itself constitutes a "search," A.O.B.14-17, the State's argument fails for the reasons already discussed.

The State's attempt to distinguish *Rush* fails. A.A.B.28. The State asserts "key differences between" daycares and firearm dealers, which have "differing reasonable expectations of privacy" under "different regulatory schemes." A.A.B.29. But aside from the obvious circularity of the State's argument (it's different because it's different), this Court observed that "[f]amily day care homes," like gun dealers, "are heavily regulated." *Rush*, 756 F.2d at 720. The State falls back on the claim that Section 26806's recordings are partly intended to prevent "firearm theft," which is not at issue in daycares. A.A.B.29-30. But while concerns about theft might apply to a brick-and-mortar gun store when the proprietor locks up and leaves for the night, things are entirely different in a *private home* which is usually *occupied* at night. Indeed, that is the thrust of Appellants' claim—that Section 26806 is overbroad *as applied to home-based dealers*. And that was the point of *Rush*, which declared broadly that a home-based business owner "undeniably has a strong privacy interest in her home." 756 F.2d at 717.

Likewise, *Jardines* explained that, "when it comes to the Fourth Amendment, the home is first among equals. At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental

---

[6] *See also* Fed. R. Civ. P. 8(a)(2) (requiring "a short plain statement of the claim showing that the pleader is entitled to relief").

intrusion.'" 569 U.S. at 6. These foundational principles protecting the home do not evaporate simply because a homeowner happens to be a business owner. Section 26806 is unconstitutionally overbroad, and the district court erred in dismissing Appellants' Fourth Amendment claim at the pleading stage.

## II. Appellants Plausibly Stated a Fifth Amendment Claim

### A. Section 26806's Dealer-Installed Surveillance Requirement Constitutes a Per Se Physical Taking.

The State denies that Section 26806 effects a per se physical taking, relying on the Federal Circuit's treatment of physical takings in "closely regulated industries" to claim that firearm dealers have voluntarily relinquished their "right to exclude" the government from their property—even their homes. A.A.B.31; *see also* A.A.B.32 (citing decisions of this Court that are in purported "align[ment]" with its position). But this argument collapses on inspection.

First, the State's first group of cases either did not involve a "closely regulated industry" or did not involve physical occupation of real property. *See, e.g., Atlas Corp. v. United States*, 895 F.2d 745, 757 (Fed. Cir. 1990). For instance, in *Ballinger v. City of Oakland*, 24 F.4th 1287, 1293 (9th Cir. 2022), this Court upheld a requirement that landlords pay tenant relocation costs—a financial burden, not a physical intrusion. *Yee v. City of Escondido*, 503 U.S. 519, 530 (1992), which upheld rent control because it "does not require … the physical occupation of … land," is inapposite for the same reason. And in *CDK Global LLC v. Brnovich*, 16 F.4th 1266 (9th Cir. 2021), this Court upheld a law authorizing third-party integrators' access to car dealers' customer information databases. Again, there was no *physical* invasion; the integrators merely could "exchange messages." *Id.* at 1281. Critically, this Court noted that the database providers already had opened their services to customers and could not now exclude

their customers' agents. *Id.* But here, Appellants have not opened their stores—and homes—to audiovisual surveillance by any third party.

The State's second set of cases fares no better. In *California Housing Securities, Inc. v. United States*, 959 F.2d 955, 958 (Fed. Cir. 1992), the court held that no taking occurred when the government seized control of a failed bank's premises, as the bank had voluntarily applied for federal deposit insurance and knew that seizure was a possibility. Unlike *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), where the taking involved a "historically rooted expectation of compensation," when a bank applies for deposit insurance, it unmistakably knows that the government might "take possession of its premises and holdings" at any time. *Cal. Hous. Sec.*, 959 F.2d at 958. That kind of expectation does not exist here. To the contrary, Appellants have a historically rooted expectation that the government will *not* commandeer their private property to effectuate a 24/7 surveillance regime—especially at their own expense. Section 26806 is historically unprecedented. Government-mandated, in-home surveillance does not reflect anything Appellants "reasonably should have … expected." *Id.* at 960.

*Mitchell Arms, Inc. v. United States*, 7 F.3d 212, 215 (Fed. Cir. 1993), rejected a takings claim based on the revocation of a firearms import license because a "contractual relationship" and "investment backed reliance" do not constitute "property" under the Fifth Amendment. Noting that the plaintiff had "voluntarily entered the firearms import business," which is completely "governmentally controlled," the court recognized no "property right" in import permits. *Id.* at 216. In contrast, Appellants here allege a physical seizure of real property—including private homes—which is not wholly controlled by the State.[7]

---

[7] *Modern Sportsman, LLC v. United States*, 145 Fed. Cl. 575, 582 (2019), is even further afield. There, the government ordered the destruction of contraband firearms, which the court held was not a taking because contraband is not protected "property." But here, Appellants' private property is *not* contraband.

12

Certainly, none of these cases remotely suggests that the government can force property owners to install surveillance cameras inside their homes for the government's benefit. That would directly conflict with *Loretto*, which found a per se taking when the government forced a landlord to install electronic equipment on its building. 458 U.S. at 421. But although *Loretto*'s facts are on all fours with Section 26806 here, the state fails to engage with it, except to claim that *Loretto* "simply does not fit." A.A.B.33.

Second, even if operation in a "closely regulated industry" affected the takings analysis, the State provides no authority for the claim that Appellants have no "enforceable right … in the heavily regulated firearms industry." A.A.B.33. If that were so, the government could seize Appellants' shops—or homes—at will. None of the State's cases says that Appellants "have less than the full bundle of rights" over their shops and homes, *id.*, merely because they are licensed firearms dealers. Indeed, "status as a regulated business does not nullify all constitutional protection." A.O.B.28. The State identifies no case blessing the permanent, uncompensated, government-mandated installation and maintenance of surveillance equipment on private property. *See* A.A.B.31-36. Assertion of a "right to exclude" may fail when it is the administrative compliance inspector a regulated party seeks to exclude. A.A.B.32. But it does not follow that Appellants have *no right* to exclude a far more invasive interference with their private property, such as the pervasive surveillance that Section 26806 imposes.

Finally, the State's core takings error is the same that permeates its brief: It mischaracterizes the alleged taking as the government's eventual *access* to the audiovisual recordings, not the state-mandated *making* of those recordings. A.A.B.35 (claiming "only two limited circumstances where the government can access the recordings"). But Appellants do not allege a taking based on retrieval of stored video

recordings. The taking is the *physical occupation* of Appellants' real property—the compelled installation and permanent operation of surveillance equipment, at their expense, for the State's benefit. That alone triggers per se treatment under *Loretto*. The fact that Appellants "have always been subject to compliance inspections," A.A.B.35, does not justify the requirement to install an Orwellian Telescreen in one's home.

Appellants plausibly stated a per se physical taking under the Fifth Amendment. The district court erred in holding otherwise.

## B. Section 26806's Dealer-Installed Surveillance Requirement Constitutes a Regulatory Taking.

Even if Section 26806 is not a per se physical taking, it independently qualifies as an uncompensated regulatory taking under *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978). The State denies this, disputing each *Penn Central* factor. A.A.B.36-41. But although *Penn Central* is inapplicable "when a regulation authorizes a physical appropriation of property," as is the case here, A.O.B.29, Section 26806 nevertheless satisfies this test in the alternative.

### 1. The "economic impact" factor "tilts strongly in Plaintiffs' favor," a point the State did not appeal.

The district court rightly concluded that the first *Penn Central* factor "tilts strongly in Plaintiffs' favor." 1-ER-26-27. Appellants' detailed cost estimates demonstrate significant economic harm, especially for home-based dealers.. At minimum, Appellants "have alleged in a non-conclusory fashion that they would suffer an economic impact under § 26806." 1-ER-27. And, as the district court observed, "where the current existing regulatory scheme requires a $115 annual fee to be an FFL, it is difficult to conceive how an alleged $17,058.31 new and additional cost would not serve as a large impact on, particularly, at-home FFLs." 1-ER-27.

The State now disputes whether these compliance costs were enough, relying on *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445 (9th Cir. 2018). A.A.B.37.

14

But *Colony Cove* concerned a decision to grant a smaller rent increase than a mobile home park had requested, a regulatory choice that arguably reduced the park's income and thereby affected the value of the underlying real estate. 888 F.3d at 447. That bears little resemblance to Section 26806, which does not merely depress returns but compels physical installation of costly government surveillance infrastructure on Appellants' property at their sole expense. The "economic impact" is not limited to diminished property value; it also includes the tens of thousands of dollars in upfront equipment costs, ongoing maintenance expenses, and the complete loss of use of that equipment for any private purpose. Unlike *Colony Cove*, this is not a dispute over margins; it is a mandate that Appellants host and bankroll the State's surveillance regime. This impact is exactly the sort of burden the Takings Clause guards against. As the Supreme Court has explained, a regulation that requires an owner to dedicate her property to the government's use without compensation deprives her of "all economically beneficial use." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538 (2005). Section 26806 does just that, and it categorically requires government compensation.

The State's theory would erase this factor altogether. It claims that "the cost imposed by a regulation is not determinative under this factor," A.A.B.37, but offers no guidance on when—if ever—cost *does* matter. Under the State's theory, even multi-million-dollar compliance mandates could evade constitutional scrutiny so long as the State framed them as "regulation." That position has no limiting principle and, if accepted, would gut the Takings Clause of meaning.

### 2. Section 26806 interferes with Appellants' investment-backed expectations.

The State denies that Appellants could have had reasonable investment-backed expectations because they operate in a "highly regulated industry." A.A.B.38. Thus, any "further regulation" apparently is fair game, seemingly no matter how unprecedented, pervasive, or cost-prohibitive it is. A.A.B.39. Once again, the State's

15

argument fails for lack of a limiting principle. The State claims that Section 26806 is merely an extension of "pre-existing reporting, signage, training, and safety and security requirements," along with "inspections of their business premises." *Id.* But pervasive audiovisual surveillance, including in private homes, is nothing like any existing requirement in California law. As the Supreme Court noted in *Murr v. Wisconsin*, 582 U.S. 383 (2017), expectations are shaped by pre-existing restrictions. *Id.* at 398 ("restriction that predates a landowner's acquisition" is how "landowners … form[] fair expectations about their property"). No one would enter the firearms industry with knowledge of recordkeeping requirements and sporadic administrative inspections, expecting that a 24/7 Orwellian Telescreen within the home is the next logical step.

### 3. Section 26806 physically invades Appellants' private property.

Finally, the State claims that Section 26806 "constitutes at most only a minimal intrusion." A.A.B.39. But again, the State focuses narrowly on future governmental *access* to the recordings and Appellants' participation in a field "of high regulation," A.A.B.39-40, rather than the core issue. Appellants are not simply complaining about government officials stopping by to take a peek at stored recordings. The State ignores the intrusion of California's surveillance apparatus itself. Compelled, uncompensated surveillance is no "routine business regulation." A.O.B.31. It is a "physical invasion by [the] government" for the reasons already discussed. *Colony Cove*, 888 F.3d at 454.[8]

---

[8] The State also claims that the "government action must be viewed in the light of the 'historical expectation of high regulation' of the firearms industry." A.A.B.41. But historically speaking, pervasive regulation of the firearms industry is a 20th-century invention. *See Biswell*, 406 U.S. at 315.

Because Appellants plausibly alleged a regulatory taking under the Fifth Amendment, this Court should reverse.

## III. Appellants Plausibly Stated a First Amendment Claim

### A. Section 26806 Chills Appellants' Rights to Free Speech and Association.

The State denies an objective chill of First Amendment rights in two ways. First, it recasts Appellants' claim as a First Amendment *retaliation* claim, requiring "retribution" "*as a consequence*" of their protected conduct. A.A.B.42. With this straw man, the State insists that Section 26806 limits governmental access to recordings, and so there is no "objectively reasonable risk of retaliation" that would cause a person of ordinary firmness to "self-censor." A.A.B.46. Second, the State insists that government surveillance *alone* cannot chill protected expression. A.A.B.48. Neither theory finds support in precedent or the challenged statute.

The State faults Appellants for not identifying any "objective adverse consequence[s]" for the exercise of speech or association rights. A.A.B.42-43. The State insists that this perceived failure dooms their claim because "the person-of-ordinary-firmness standard rel[ies] on the chilling effect of some kind of adverse action, negative consequence, or threat." A.A.B.42, 46 n.12. But all of the State's authorities involved First Amendment *retaliation* and *retribution* claims, not chilling effect claims.[9] A.A.B.46 n.12. Appellants alleged that Section 26806's surveillance mandate will chill—and has chilled—their First Amendment activities. 2-ER-249-50; A.O.B.35-36. That is enough; allegations of retaliation are not required. *See Perry v. Schwarzenegger*, 591 F.3d 1126, 1143 (9th Cir. 2010) (allegations that compelled disclosure by itself would "drastically alter how" plaintiff "communicates in the future" state a claim).

_____

[9] The same is true of the four cases the State later collects to suggest that this Court should decide ordinary firmness as a matter of law. *See* A.A.B.47-48 n.13.

The "test is whether a 'person of ordinary firmness' would be chilled *knowing they are being surveilled*." A.O.B.38 (emphasis added); *cf. Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 868 (9th Cir. 2016) ("intercepting mail" and "covert surveillance of church services" "may chill speech"). Here, the State cannot credibly deny that surveillance is occurring or that it has the power to chill speech. 2-ER-249-50. As Justice Sotomayor observed, "[a]wareness that the government may be watching chills associational and expressive freedoms." *United States v. Jones*, 565 U.S. 400, 416 (2012) (Sotomayor, J., concurring). If "society is prepared to accept as reasonable [the] expectation to be free from video surveillance while alone in [someone else's] hotel room," *United States v. Nerber*, 222 F.3d 597, 604 (9th Cir. 2000), surely Appellants have a reasonable expectation to be free from video *and audio* surveillance within *their own* homes.[10]

Sensitive to the obvious problems of surveilling Americans within their own homes, the State again demurs that there is no reasonable likelihood of retaliation because there are "careful statutory limits" on government "access" to the recordings. A.A.B.46, 43. The State insists that "Section 26806 … preclud[es] anyone—*including the government*—from accessing the system or recordings." A.A.B.44 (emphasis added). But this is plainly wrong. While a *licensee* may not use the recordings "except" to turn them over to the government, once seized, the statute imposes no constraints on the State's use. Cal. Penal Code § 26806(b). The State itself concedes that government inspectors might incidentally hear protected conversations while they "necessarily watch and listen" to the recordings. A.A.B.45, 57 n.16. But even if Section 26806 imposed "limitations" on government *use* (it does not), the chilling effect on

---

[10] The police in *Nerber* did not record audio because they conceded it would violate the federal wiretap statute, 18 U.S.C. § 2511(2)(c), which prohibits such government surveillance absent consent of at least one party.

Appellants begins at the moment of *recording*, whether or not it is ever seized and reviewed.[11]

Eventually, the State reluctantly acknowledges that Appellants assert a freestanding claim of a chilling effect based on *surveillance itself*. A.A.B.42 (admitting that any language about retribution appears only "in places"). But it denies that government surveillance itself can chill protected speech, claiming that *Laird v. Tatum*, 408 U.S. 1 (1972), and *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), foreclose Appellants' claim. The State's position finds support in neither case.

As an initial matter, both *Clapper* and *Laird* concerned the challengers' standing to sue in the first place. *Clapper*, 568 U.S. at 417. The district court rightly held that Appellants have standing on their First Amendment claim (1-ER-9), and the State does not dispute that here. What's more, *Laird* noted that standing *does* lie where "governmental regulations … fall short of a direct prohibition against the exercise of First Amendment rights" but nevertheless chill expression through "regulatory, proscriptive, or compulsory" government action. 408 U.S. at 11. That is precisely the case here—Appellants "presently" are subject to Section 26806's "regulations," "proscriptions," and "compulsions," resulting in an unconstitutional "chilling effect."

More to the point, both cases are distinguishable. The *Laird* Court rejected a chilled-speech claim because the challengers did not allege any changes to their conduct, in fact alleging that they were *not* chilled by the challenged government action. *Id.* at 13. Indeed, the challengers admitted that "they were quite willing 'to open themselves up to public investigation and public scrutiny.'" *Id.* at 13 n.7. Meanwhile, *Clapper* involved entirely speculative allegations that the government

---

[11] The State's point that "many FFLs already used similar security systems prior to Section 26806 going into effect" is also unavailing. A.A.B.47. One's voluntary use of their own "form of security camera" (2-ER-263)—over which they alone have control—has no bearing on the chilling effects of Section 26806's *government-mandated* and *government-accessible* surveillance.

might "incidentally acquire[]" communications with surveilled foreigners. 568 U.S. at 414. There was no alleged "threat of certainly impending interception" of those communications. *Id.* at 417. The State can hardly say the same here, where Section 26806 *mandates* surveillance at all hours of the day. Surveillance is not speculative; it is certain and ongoing.

The State fails to distinguish Appellants' authorities. Labeling *Presbyterian Church (USA) v. United States*, 870 F.2d 518 (9th Cir. 1989), a "pre-*Clapper* case," the State claims it and Appellants' other cases "involved direct government surveillance." A.A.B.49-50. But so does Section 26806, which requires the regulated entity to purchase and install the government's equipment. Even if there were a distinction, the State cites no authority as to why it would matter. To the contrary, the district court itself acknowledged "a wide variety of conduct … impermissibly interferes with speech," including the prospect of being "recorded by watchful eyes and perhaps kept on government file." 1-ER-9-11. That is exactly what occurs under Section 26806.

Next, the State argues there is no distinction for home-based dealers, claiming that by entering the firearms industry, Appellants consented to any restriction California might later impose—even inside their homes. A.A.B.51-52. That sweeping claim finds no support in First Amendment precedent. The lone authority the State cites—*Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978)—concerned Fourth Amendment inspections, not First Amendment speech or association. But the home remains "first among equals" for constitutional protection. *Jardines*, 569 U.S. at 6. And the First Amendment is no second-class right. Rather than creating an "intolerable loophole" to protect Appellant FFLs within their homes, A.A.B.52, the State proposes a sweeping "highly regulated industry" exception to the *First* Amendment, where any and all invasions are fair game. When pressed for a "limiting principle" to this argument, A.O.B.41, the State offered none.

20

Finally, the State dismisses Appellants' chilled-association argument because Section 26806 "does not require disclosure of membership in any organization or otherwise compel speech of any kind." A.A.B.53. But once again, the State predicates this argument on its misreading of the statute's limitations on use. *See* A.A.B.53-54. Thus, it fails for the reasons already discussed. The State offers no other theory to rebut this claim. Section 26806 obviously will chill free association—and Appellants sufficiently alleged it has already done so. *See* 2-ER-249-50.

Appellants pled that Section 26806 chills their First Amendment expressive conduct and association. At least on a motion to dismiss, the district court was wrong to hold otherwise.

### B.    Section 26806 Fails Under "Intermediate Scrutiny."

The State claims that "intermediate scrutiny" applies because the government's "burden[]" on speech or association is "'only incidental to the statute's regulation of activity that is not protected by the First Amendment'" A.A.B.55 (quoting *Free Speech Coal., Inc. v. Paxton*, 145 S. Ct. 2291, 2317 (2025)). At the pleading stage, applying this merits test is premature.[12] But in any case, Section 26806 fails "intermediate scrutiny." Even if the State had an interest in mass-surveilling the firearms industry (it does not), Section 26806 "burden[s] substantially more speech than necessary to further those interests." *TikTok Inc. v. Garland*, 145 S. Ct. 57, 67 (2025). Indeed, the State has no use for private conversations unrelated to firearms commerce, or those conversations taking place outside of business hours—especially within the home.

### C.    Section 26806 Implicates the Right to Speak Anonymously.

Although conceding that the First Amendment protects the right to speak anonymously, the State claims "that principle … is wholly inapposite here." A.A.B.56.

---

[12] Moreover, Appellants' surveilled activities *are* protected by the First Amendment, and so "intermediate scrutiny" cannot be the applicable test. *See, e.g.*, *City of Cincinnati v. Discovery Network*, 507 U.S. 410 (1993) (commercial speech).

As the State sees it, Section 26806 "does not regulate speech" or "require the disclosure of any individual's identity." A.A.B.57. But there is no difference between the government requiring a Communist Party meeting to provide a list of *attendee names* and requiring the organizer to provide *pictures* of each attendee so the government can then run them through facial recognition software. *See* A.O.B.45-46. The State also claims that anonymity does not apply to those who voluntarily appear in "commercial spaces," A.A.B.5—as if an after-hours private meeting of GOA members at a gun store is not *precisely* what First Amendment anonymity principles are meant to protect. Section 26806 unmasks those who wish to remain anonymous in public. It records images and audio of all entries, exits, and points of sale, "sufficient to identify the parties involved." Cal. Penal Code § 26806(a)(3)(C). That "disclose[s] the identity of anonymous speakers." A.A.B.56. To claim otherwise strains credulity.

### D. Section 26806 Is Unconstitutionally Overbroad.

Finally, the State claims Section 26806 "does not regulate or punish any protected free speech or expressive activity, much less a substantial amount," and so it cannot be overbroad. A.A.B.59. But if the compelled recording of nighttime familial conversations that have nothing to do with gun sales is not "punish[ment]" through regulation, it is hard to imagine what would be. Section 26806 reaches far more speech than is remotely necessary to deter firearm-related crime. It is *by definition* overbroad.

## CONCLUSION

For these reasons and those explained in Appellants' Opening Brief, the judgment of the district court should be reversed.

Respectfully submitted,

Dated: September 17, 2025      MICHEL & ASSOCIATES, P.C.

s/ Anna M. Barvir
Anna M. Barvir
*Attorneys for Plaintiffs-Appellants Adam Richards, Jeffrey Vandermeulen, Gerald Clark, Jesse Harris, On Target Indoor Shooting Range, LLC, Gaalswyk Enterprises, Inc. (D/B/A/ Smokin' Barrel Firearms), Gun Owners of California, Inc., Gun Owners of America, Inc., Gun Owners Foundation, and California Rifle & Pistol Association, Incorporated*

Dated: September 17, 2025      LAW OFFICES OF DONALD KILMER, APC

s/ Donald Kilmer
Donald Kilmer
*Attorney for Plaintiff-Appellant Second Amendment Foundation*

Dated: September 17, 2025      STAMBOULIEH LAW, PLLC

s/ Stephen D. Stamboulieh
Stephen D. Stamboulieh
*Attorney for Plaintiffs-Appellants Gun Owners of California, Inc., Gun Owners of America, Inc., and Gun Owners Foundation*

Dated: September 17, 2025      WILLIAM J. OLSON, P.C.

s/ Robert J. Olson
Robert J. Olson
*Attorney for Plaintiffs-Appellants Gun Owners of California, Inc., Gun Owners of America, Inc., and Gun Owners Foundation*

23

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 25-693

I am the attorney or self-represented party.

**This brief contains** | 6,723 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [                    ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Anna M. Barvir | **Date** | September 17, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2025, an electronic PDF of

**APPELLANTS' REPLY BRIEF,** was uploaded to the Court's CM/ECF system,

which will automatically generate and send by electronic mail a Notice of Docket

Activity to all registered attorneys participating in the case. Such notice constitutes

service on those registered attorneys.

Dated: September 17, 2025                         Respectfully submitted,

                                        **MICHEL & ASSOCIATES, P.C.**

                                        s/ Anna M. Barvir
                                        Anna M. Barvir
                                        *Attorneys for Plaintiffs-Appellants*